## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

JESSIE CRITTINDON et al.,

      Plaintiffs,

      v.

MARLIN GUSMAN et al.,

      Defendants.

Case No. 3:17-cv-00512-SDD-EWD

## MEMORANDUM IN OPPOSITION TO
## MOTION TO DISMISS BY DEFENDANTS GUSMAN AND AMACKER

Plaintiffs Jessie Crittindon and Leon Burse, through undersigned counsel, file this

Memorandum in Opposition to the Motion to Dismiss filed by Defendants Marlin Gusman and

Corey Amacker ("OPSO Defendants")[1] on November 28, 2017. Plaintiffs' First Amended

Complaint asserts four claims against the OPSO Defendants: violation of their federal due process

rights guaranteed by the Fourteenth Amendment, violation of their state due process rights

guaranteed by Article 1, Section 2 of the Louisiana Constitution, as well as state torts for false

imprisonment and intentional infliction of emotional distress. The OPSO Defendants have been

sued in their individual and official capacities. Plaintiffs seek declaratory relief and damages.[2] The

OPSO Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on two bases: (1) qualified

---

[1] Plaintiffs' First Amended Complaint, Rec. Doc. 4, uses the term "OPSO Defendants" to refer collectively to Defendants Maynard, Gusman, and Amacker. OPSO refers to the Orleans Parish Sheriff's Office. The memorandum in support of the motion to dismiss filed by Defendants Gusman and Amacker includes a reference to claims against Defendant Maynard, Rec. Doc. 50-1 at 4, but it appears to be inadvertent and in error; the motion to dismiss is only filed on behalf of Defendants Gusman and Amacker. Defendant Maynard has filed his own motion to dismiss Plaintiffs' Complaint, Rec. Doc. 17. For purposes of this memorandum, Plaintiffs will use "OPSO Defendants" to refer to Defendants Gusman and Amacker.

[2] Rec. Doc. 4 at 23.

immunity as to Plaintiffs' claim of federal due process violations,[3] and (2) failure to allege a valid cause of action as to Plaintiffs' claims of state constitutional and state tort violations.

## I.    Defendants are not entitled to qualified immunity from Plaintiffs' Fourteenth Amendment claim of due process violations.

### A.    Plaintiffs had a clearly established right to be released from their incarceration once no legal authority existed to detain them.

Defendants assert that they are entitled to qualified immunity on Plaintiffs' claim of unlawful violation of their due process rights under the Fourteenth Amendment. They seek dismissal for failure to state a due process claim against the OPSO Defendants.

Qualified immunity is an affirmative defense that is available only as to individual capacity damages claims.[4] It provides government officials with immunity in their personal capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citation omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 741.[5] Courts apply a two-part test, asking (1) whether the plaintiff has alleged a violation of an actual constitutional right, and (2) if so, whether

---

[3] The due process protections provided by the Louisiana Constitution are coextensive with the due process protections provided under federal law. As will be articulated in this memorandum, for the reasons Plaintiffs have adequately stated a claim against the OPSO Defendants for the deprivation of their federal due process rights, Plaintiffs have also appropriately pled their state due process claim as to these Defendants.

[4] Defendants Gusman and Amacker have been sued in their individual and official capacities. Rec. Doc. 4 ¶¶ 15, 21. Plaintiffs will separately address their claims of liability against the OPSO Defendants in their official capacities, but the OPSO Defendants' reliance on qualified immunity is only applicable to the individual capacity claims.

[5] "[T]he salient question that the Court of Appeals ought to have asked is whether the state of the law . . . gave respondents fair warning that their alleged treatment of [Petitioner] was unconstitutional." Id.

2

the right was clearly established at the time of the violation. Cooper v. Brown, 844 F.3d 517, 522 (5th Cir. 2016).

"To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). Here, the Fifth Circuit has articulated that "there is a clearly established right to timely release from prison." Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011). "Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison." Id. (citing Whirl v. Kern, 407 F.2d 781, 792 (5th Cir. 1968)).[6] See also Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."). Defendants do not contest that Plaintiffs had a clearly established right to be released from their incarceration once no legal authority existed to continue their detention.

B.  Plaintiffs have alleged a violation of their clearly established right.

Plaintiffs Crittindon and Burse have explicitly pled that they were held in custody for months beyond the dates on which they were entitled to release. Specifically, Plaintiffs have pled that Mr. Crittindon resolved his criminal charges on August 2, 2016 and was immediately entitled to release. Instead, he continued to be held until January 13, 2017.[7] As to Mr. Burse, Plaintiffs

---

[6] "There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence." Whirl, 407 F.2d at 791.
[7] Rec. Doc. 4 ¶¶ 40-41, 54.

have pled that he resolved his criminal charges on August 8, 2016 and was immediately entitled to release. Mr. Burse continued to be held until January 11, 2017.[8]

Plaintiffs have also pled that no open charges, warrants, or holds existed during the period of unlawful detention, and that each OPSO Defendant had access to law enforcement databases, agency documents, and court records evincing this.[9] Further, Plaintiffs have pled that their continued detention beyond the dates on which they were entitled to release was in violation of their rights.[10] Defendants do not appear to dispute that, in alleging detention for months beyond their release dates, Plaintiffs have pled a violation of their clearly established due process rights. Rather, Defendants seem to dispute whether Plaintiffs have pled adequate involvement of these particular Defendants sufficient to state a claim.[11]

      C.  <u>Plaintiffs have alleged a violation of their clearly established right by each OPSO Defendant.</u>

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me

---

[8] Rec. Doc. 4 ¶¶ 60-61, 67.
[9] Rec. Doc. 4 ¶¶ 48, 70.
[10] Rec. Doc. 4 ¶¶ 47, 69.
[11] Rec. Doc. 50-1 at 6-11.

accusation." <u>Wooten v. McDonald Transit Assocs., Inc.</u>, 788 F.3d 490, 498 (5th Cir. 2015) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).[12] "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" <u>Gregson v. Zurich American Ins. Co.</u>, 322 F.3d 883, 885 (5th Cir. 2003).

A supervisory official such as these individual Defendants[13] is liable under 42 U.S.C. § 1983 when "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in constitutional injury." <u>Gates v. Texas Dep't of Prot. & Reg. Servs.</u>, 537 F.3d 404, 435 (5th Cir. 2008). This includes individual acts of promulgating and oversight of policies that cause constitutional harm. <u>Hinojosa v. Livingston</u>, 807 F.3d 657, 668-69 (5th Cir. 2015). At the Rule 12 stage of the proceedings, the salient question is what Plaintiffs have pled, and all questions of fact must be resolved in their favor. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

Plaintiffs have pled that the OPSO Defendants personally are liable for violations of their due process rights. Plaintiffs have pled that Defendant Gusman is liable for two primary reasons: (1) his failure to implement appropriate policies and practices to prevent this constitutional injury, and (2) his failure to train and supervise OPSO staff, resulting in this constitutional injury. As to Defendant Amacker, Plaintiffs have pled that he is liable both in his supervisory capacity and

---

[12] "The Supreme Court's decisions in <u>Iqbal</u> and <u>Twombly</u> . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a court must '"accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff.'" <u>Iqbal</u> and <u>Twombly's</u> emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n. 44 (5th Cir. 2011) (internal citations omitted).

[13] As to Defendant Amacker, Plaintiffs have pled that he served in a supervisory and policymaker role within OPSO, but also that he was personally and directly responsible for the completion of records necessary for persons to be processed into and then released from the Department of Public Safety and Corrections ("DPS&C).

through his direct and personal failure as the "DPS&C Classification Manager"[14] to complete and provide the necessary documentation and paperwork for persons sentenced to the Department of Public Safety and Corrections ("DPS&C") to ensure their processing and release. As detailed below, Plaintiffs have pled personal liability as to each OPSO Defendant for violation of Mr. Crittindon's and Mr. Burse's clearly established due process right to be released from custody where no authority existed to continue their detention. Denial of qualified immunity is appropriate.

### i. Defendant Gusman

Fifth Circuit precedent clearly establishes that "a jailer has a duty to ensure that inmates are timely released from prison." Porter v. Epps, 659 F.3d 440, 445-46 (5th Cir. 2011). "While not a surety for the legal correctness of a prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release." Whirl v. Kern, 407 F.2d 781, 792 (5th Cir. 1969) (internal citations and footnote omitted). Further, "[i]f [the jailer] negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable." Bryan v. Jones, 530 F.2d 1210, 1215 (5th Cir. 1976) (en banc). Such are precisely Plaintiffs' allegations against Defendants Gusman and Amacker.

#### 1. Defendant Gusman violated Plaintiffs' due process rights by establishing and implementing, and by failing to establish and implement, OPSO policies and procedures.

Plaintiffs directly allege that Defendant Gusman was responsible for formulating and administering the policies, procedures, operations, and supervision of OPSO, its divisions,

---

[14] Rec. Doc. 4 ¶ 20.

employees, agents, assigns, and jail facilities.[15] This responsibility included the establishment of policies and procedures for processing prisoners into, within, and out of OPSO custody, as well as the implementation of policies and procedures for pretrial housing, classification, and transfer of prisoners to DPS&C custody.[16] Defendants agree that supervisory defendants are liable for their actions in establishing unconstitutional policy, or in failing to create policy.[17]

Here, Plaintiffs have pled that Defendant Gusman was responsible for policies and procedures pertaining to the transfer of OPSO prisoners, including Plaintiffs, to the River Bend Detention Center in East Carroll Parish for pretrial housing. And that he established the policy and practice of transferring and "releasing" DPS&C-sentenced Orleans prisoners to the East Carroll facility.[18] In October 2016, Defendant Maynard began in his role as Independent Jail Compliance Director with authority to operate the Orleans jail facility and to manage the OPSO prisoner population. However, Plaintiffs carefully pled that Defendant Gusman remained the elected Sheriff of Orleans Parish, and that Defendant Gusman's policies and procedures remained in effect as Defendant Maynard transitioned into leadership of the jail.[19] Plaintiffs Crittindon and Burse were "released"[20] to the East Carroll facility in August 2016 after resolution of their criminal charges. Defendant Gusman had final authority for the operation of the Orleans jail at this time.

---

[15] Rec. Doc. 4 ¶ 12.

[16] Id.

[17] Rec. Doc. 50-1 at 5 (citing Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011)).

[18] Rec. Doc. 4 ¶¶ 13, 14.

[19] Rec. Doc. 4 ¶ 11 n.1.

[20] As pled in the First Amended Complaint, Rec. Doc. 4 ¶ 21 n.2, here the term "release" merely refers to an entry made in the OPSO database that a prisoner is no longer considered – by OPSO – to be in its custody. But Plaintiffs have alleged that this entry does not coincide with a physical release from custody or with a legal transfer of custody to another agency or facility.

Plaintiffs specifically pled that Defendant Gusman has a constitutional obligation to ensure that he only incarcerates those individuals that he has the lawful authority to detain. Further Plaintiffs pled that Defendant Gusman has a state statutory obligation to ensure that individuals sentenced to the DPS&C are "timely and properly transferred to the state correctional institutions designated by DPS&C," a duty that includes "delivery (with the prisoner) of all documents and statements required by state law."[21] Despite these obligations, Plaintiffs pled that Defendant Gusman "failed to create and implement policies or practices to ensure that OPSO only incarcerated those individuals it was legally authorized to detain."[22] Instead, Defendant Gusman "authorized and allowed staff practices that predictably resulted in unlawful detention, including specifically the practice of "releasing" OPSO detainees to ECPSO's physical custody upon sentencing without proper processing, time calculation, or analysis of the propriety of their continued detention."[23] Plaintiffs then specifically pled that the OPSO Defendants, including Defendant Gusman, were aware that this practice "had a significant likelihood of resulting in unlawful detention,"[24] and that Plaintiffs' over detention resulted from the failure of Defendant Gusman to implement appropriate policies and practices over which he personally had control.[25] It is this authorized practice of the OPSO – and the predictable harm that resulted – that is at the core of Plaintiffs' claims of violations of their due process rights.

Defendant Gusman was aware that OPSO policies and procedures were not in place to ensure that DPS&C received the requisite paperwork and documentation necessary to effect

---

[21] Rec. Doc. 4 ¶ 15.
[22] Rec. Doc. 4 ¶ 14.
[23] Id.
[24] Rec. Doc. 4 ¶¶ 42, 61.
[25] Rec. Doc. 4 ¶¶ 14-15.

Plaintiffs' time calculations and orders of release.[26] As a result of Defendant Gusman's failures in policy development and implementation, OPSO did not timely complete and provide the proper paperwork and documentation to enable Plaintiffs' processing into and out of the DPS&C system.

> 2. Defendant Gusman violated Plaintiffs' due process rights through his failure to train and supervise his OPSO staff.

Plaintiffs have also alleged that Defendant Gusman failed to train and supervise OPSO staff to prevent the unlawful over detention of DPS&C-sentenced Orleans detainees at the East Carroll facility.[27] Defendant Gusman also failed to instruct OPSO staff to take prompt corrective action when allegations of over detention were received.[28] A plaintiff may succeed on such a failure to train claim where the plaintiff shows that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

Plaintiffs have pled specific personal involvement by Defendant Gusman in the unlawful over detention of persons (including Mr. Crittindon and Mr. Burse) who were to be transferred from Orleans pretrial custody to DPS&C "sentenced" custody. At all times during Plaintiffs' unlawful detention, Defendant Gusman and OPSO officials had access to law enforcement databases, agency documents, and court records which provided for Plaintiffs' dates of arrest, their time served, and the disposition of their only open criminal charges.[29] No open charges, warrants,

---

[26] Rec. Doc. 4 ¶¶ 14, 41-42, 61.
[27] Rec. Doc. 4 ¶ 14.
[28] Id.
[29] Rec. Doc. 4 ¶¶ 48, 70.

or holds existed as to any Plaintiff pursuant to which Defendant Gusman was entitled to keep Plaintiffs in custody.[30] Additionally, as to Defendant Gusman and Defendant Amacker, Plaintiffs have pled specific actions taken to inform the OPSO Defendants and their staff of Plaintiffs' over detention.[31] The OPSO Defendants were well aware that their practices were resulting in over detention, yet they took no responsive or corrective action:

- Plaintiffs pled that between August 2016 and January 2017, Plaintiff Crittindon's family called and visited the Orleans Parish Sheriff's Office "on multiple occasions" in an effort to secure his release. "Over the course of his unlawful incarceration, Mr. Crittindon's family and loved ones repeatedly contacted OPSO . . . on his behalf."[32]

- Plaintiffs also pled that "[o]ver the course of his unlawful incarceration, Plaintiff Burse's family and loved ones repeatedly contacted OPSO . . . on his behalf."[33]

- Plaintiffs have further pled that Defendant Gusman was contacted personally via letter in December 2016 by attorneys with the MacArthur Justice Center, requesting resolution of the over detention of Orleans-sentenced detainees at the East Carroll facility.[34]

---

[30] Id.
[31] Defendants erroneously assert, Rec. Doc. 50-1 at 10 n.6, that Plaintiffs do not allege any notice relating to their over detention was provided to any OPSO official or employee.
[32] Rec. Doc. 4 ¶ 49.
[33] Rec. Doc. 4 ¶ 68.
[34] Rec. Doc. 4 ¶¶ 51, 72.

Yet during their months of over detention, Defendant Gusman and his staff failed to provide for Plaintiffs' release from custody, "despite their criminal charges having been resolved, their lawful sentences having been served, and there being no continuing legal basis for their detention."[35]

Defendants' argument for dismissal appears to center on whether Plaintiffs have adequately pled that the OPSO Defendants were on notice that the Department's authorized practice of "releasing" OPSO detainees to ECPSO's physical custody upon sentencing without proper paperwork and documentation would result in constitutional violation. Rec. Doc. 50-1 at 6-7. As detailed above, Plaintiffs have pled specifically that OPSO officials were notified of the over detention of Mr. Crittindon and Mr. Burse; the OPSO Defendants took no corrective action to remedy the constitutional violations against Plaintiffs Crittindon and Burse, or to change their practices which caused this harm. Further, to ultimately prevail on a claim of supervisory liability for constitutional violations committed by subordinates, a plaintiff does have to show that the defendant "disregarded a known or obvious consequence of his action." Porter v. Epps, 659 F.3d 440, 447 (5th Cir. 2011). But as such, a defendant can be on notice as to the risk of harm from his actions by virtue of the sheer fact that the consequences are obvious. See Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992) ("A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."). See also Bryan v. Jones, 530 F.2d 1210, 1215 (5th Cir. 1976) ("In a case such as this one, where there is no discretion and relatively little time pressure, the jailer will be held to a high level of reasonableness as to his own actions.").

---

[35] Rec. Doc. 4 ¶ 15.

11

This is exactly what Plaintiffs have pled with regard to Defendants Gusman and Amacker. Plaintiffs have pled that Defendant Gusman had known constitutional and statutory obligations to provide for the timely release of persons in his custody, to provide the required documentation necessary for a parish prisoner to be processed into and out of the DPS&C system upon sentencing, and to train his staff regarding same.[36] Defendant Gusman disregarded these obligations, and instead authorized a practice which "predictably resulted in unlawful detention."[37] Having installed the practice of "releasing" DPS&C-sentenced Orleans prisoners to the East Carroll facility without providing for the necessary paperwork and documentation to ensure their release from the DPS&C system, Defendant Gusman ignored the known and obvious consequence that this practice would result in Plaintiffs' unlawful over detention. Plaintiffs are not required to demonstrate a pattern of constitutional violations stemming from the challenged actions, including specifically the OPSO Defendants' failures in policy development and implementation.

Where the OPSO Defendants seek to dismiss Plaintiffs' due process claim under Rule 12(b)(6), at this procedural stage all that is required of Plaintiffs is to have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] In the instant case, the acts and omissions alleged extensively by Plaintiffs in the Complaint and cataloged above are clearly integral to the OPSO Defendants' obligation to only detain persons where there is lawful authority. Defendants' failure to act accordingly would foreseeably result in a constitutional harm exactly of the sort alleged by Plaintiffs.

---

[36] Rec. Doc. 4 ¶ 15.
[37] Rec. Doc. 4 ¶ 14. See also Rec. Doc. 4 ¶¶ 42, 61 (pleading that the "OPSO Defendants were aware that the practice they followed with [Plaintiffs Crittindon and Burse] had a significant likelihood of resulting in unlawful detention").
[38] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

ii.  Defendant Amacker

As with Defendant Gusman, Plaintiffs have pled that Defendant Amacker personally is liable for violations of Plaintiffs' due process rights as a result of (1) his failure to implement appropriate policies and (2) his failure to train and supervise OPSO staff. Further Plaintiffs allege that Defendant Amacker personally failed to complete and provide the requisite paperwork for the processing of Orleans detainees into and out of the DPS&C system. The legal standards and inquiries as to Plaintiffs' pleadings regarding Defendant Amacker mirror those outlined as to Defendant Gusman above, and therefore will not be repeated herein.

Plaintiffs allege that Defendant Amacker has policymaking authority for purposes of establishing and implementing practices and procedure pertaining to the processing of Orleans prisoners into DPS&C custody.[39] Further, Plaintiffs pled that Defendant Amacker "personally implemented policy, including the "release" of sentenced Orleans prisoners to the River Bend facility, and acted under direction and supervision of Defendants Gusman and Maynard."[40] Plaintiffs have also alleged that Defendant Amacker was responsible for supervising OPSO staff in entering sentencing orders and case dispositions into OPSO's electronic database.[41] Along with Defendant Gusman, Defendant Amacker was "aware that the practice [OPSO] followed with [Plaintiffs Crittindon and Burse] had a significant likelihood of resulting in unlawful detention but [he] chose to "release" [Plaintiffs] to East Carroll Parish."[42]

---

[39] Rec. Doc. 4 ¶ 20.
[40] Id.
[41] Id.
[42] Rec. Doc. 4 ¶¶ 41-42, 61.

Plaintiffs have also pled specific personal involvement by Defendant Amacker in the unlawful over detention of DPS&C-sentenced prisoners (including Mr. Crittindon and Mr. Burse) who were transferred to the East Carroll facility without the requisite paperwork and documentation having been completed and provided. Plaintiffs allege that Defendant Amacker is designated as the "DPS&C Classification Manager" for OPSO and is responsible for the "documentation, processing, and pre-classification of Orleans Parish prisoners who have been sentenced to time in DPS&C by the Orleans Parish Criminal District Court."[43] His responsibilities also extend to compiling and reviewing DPS&C transfer lists for those prisoners whose paperwork has been completed, and "personally entering sentencing orders and case dispositions into OPSO's electronic database."[44] Plaintiffs pled that Defendant Amacker personally "had access to and knowledge of prisoners' arrest dates and times served in OPSO custody, as well as any open charges, warrants, or holds."[45]

Here, Defendant Amacker recorded the "release" of Mr. Crittindon and Mr. Burse in OPSO's database, and authorized Plaintiffs' transport to the River Bend Detention Center after sentencing.[46] Defendant Amacker was aware that OPSO had failed to complete and provide Plaintiffs' pre-classification paperwork necessary for Plaintiffs' processing into and release from the DPS&C system.[47] At all times during their unlawful detention, Defendants Amacker knew that no open charges, warrants, or holds existed as to Plaintiffs pursuant to which Defendants were

---

[43] Rec. Doc. 4 ¶ 20.
[44] Id.
[45] Id.
[46] Rec. Doc. 4 ¶ 21.
[47] Rec. Doc. 4 ¶¶ 42, 49, 61, 68.

14

entitled to keep Plaintiffs in custody.[48] Further, as detailed above, Defendant Amacker and the OPSO were notified directly of the over detention of Plaintiffs Crittindon and Burse. Plaintiffs have pled the Defendant Amacker "personally was aware of Plaintiffs' unlawful detention and failed to take steps to investigate or secure their release."[49]

In their Motion to Dismiss, the OPSO Defendants question what action they "could or should have done to provide for the Plaintiffs' release"[50] and "what Sheriff Gusman or any OPSO employee might have done to effect their release from custody after they were sentenced to DOC time, released from OPSO custody, and transferred to East Carroll Parish."[51] This question is easily answered by the OPSO Defendants' constitutional and statutory obligations: provide the pre-classification paperwork and documentation as required by state law and as necessary for persons to be legally transferred into and subsequently released from the custody of DPS&C. Contrary to the OPSO Defendants' assertions, Plaintiffs' claims do not derive merely from their physical transfer to the East Carroll facility upon sentencing. Plaintiffs do not argue that Defendants Gusman and Amacker unilaterally should have released Plaintiffs without processing paperwork through the Department of Corrections. Rather the crux of Plaintiffs' claims against the OPSO Defendants is their knowing failure to provide the policies, supervision, training, and direct personal action to effect the completion and provision of the documentation necessary for DPS&C-sentenced individuals to be processed and released. Thus Plaintiffs have pled that these OPSO Defendants knew of the flawed practice they had authorized – the transfer of DPS&C-sentenced

---

[48] Rec. Doc. 4 ¶¶ 48, 70.
[49] Rec. Doc. 4 ¶ 21.
[50] Rec. Doc. 50-1 at 8.
[51] Rec. Doc. 50-1 at 9.

prisoners to East Carroll Parish without furnishing the necessary and required paperwork to effect their release. The known result of this practice was the over detention of such individuals, including the Plaintiffs in this case.

Finally, as Plaintiffs' Complaint indicates, this was not a singular event or error. Rather, many detainees suffered from the OPSO Defendants' failures of policy, practice, and training that resulted in persons not having their time calculations and release assessments performed in a manner that would ensure their timely release from custody. This was not an isolated incident of which a supervisory official would not be aware; it was repeated many times over, as a result of OPSO practices over which these Defendants had control. This is the very basis of the suits filed by Plaintiffs Crittindon and Burse, along with consolidated Plaintiffs Copelin, Dominick, and Guidry.

### iii.  Orleans Parish

Plaintiffs also seek relief against the OPSO Defendants in their official capacities. The OPSO Defendants contest that Plaintiffs have adequately pled a policy or custom of the Orleans Parish Sheriff's Office sufficient to demonstrate that the deliberate conduct of the Office caused the constitutional injury alleged.[52] But as detailed above, Plaintiffs have specifically pled that both Defendants Gusman and Amacker authorized and employed a practice and custom of transferring DPS&C-sentenced prisoners from Orleans Parish to the East Carroll Parish detention center without timely and proper completion of the paperwork and documentation necessary to ensure their release. They each were setting official policy of the OPSO sufficient to create liability of the

---

[52] Rec. Doc. 50-1 at 11-12.

OPSO itself.[53] The result of this practice was unlawful over detention and the deprivation of Plaintiffs' Fourteenth Amendment right to due process.[54]

A defendant acts with deliberate indifference where he "disregarded a known or obvious consequence of his action." Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). In this case, Plaintiffs have pled that the OPSO Defendants knowingly authorized and enacted a practice of transferring Orleans detainees after sentencing without timely completion and provision of the documentation required by state law and necessary for their processing and release. Plaintiffs have pled that OPSO continues to engage in this practice today "despite repeat communications from Plaintiffs' counsel about the consequences of this practice (including over detention and untimely processing of persons into DPS&C custody), and despite additional instances of over detention."[55]

## II.   Plaintiffs have pled valid state law claims against the OPSO Defendants.

Plaintiffs have pled valid state tort claims of false imprisonment and intentional infliction of emotional distress, as well as violation of the state constitution's due process protections. The OPSO Defendants have moved to dismiss these claims for failure to state a cause of action. At this procedural stage, the court must "take all well-pleaded facts as true" and "view them in the light more favorable to the plaintiff." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[53] "[P]olicymaking authority "may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority."" Flores v. Cameron County, Tex., 92 F.3d 258 (5th Cir. 1996) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988)). The Supreme Court has also recognized that "a series of decisions by a subordinate official [could] manifest[] a "custom or usage" of which the supervisor must have been aware," for purposes of official liability under § 1983. City of St. Louis v. Praprotnik, 485 U.S. at 130.

[54] Inadequacy of training, as pled by Plaintiffs in their Complaint as to each OPSO Defendant, may also "serve as the basis for § 1983 liability" where "the failure to train amounts to deliberate indifference to the rights of persons . . . . ." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

[55] Rec. Doc. 4 ¶ 79.

A.  <u>False Imprisonment</u>

The elements of the tort of false imprisonment are straightforward: detention against one's will by another who lacks the legal authority to detain. <u>Bunch v. Pitre</u>, 618 So. 2d 1062 (La. App. 1st Cir. 1985). Here, Plaintiffs have alleged that they remained imprisoned for months beyond the dates they were entitled to release.[56] The OPSO Defendants physically transferred Plaintiffs to East Carroll Parish. These Defendants knew that Plaintiffs were sent there after sentencing, and did not complete the proper paperwork or processing into the Department of Corrections' custody. These allegations adequately satisfy the pleading standard for Plaintiffs' claim that they were detained against their will. As to the second component of false imprisonment, Plaintiffs have likewise pled that no legal authority existed to keep them imprisoned and they were entitled to release.[57]

The OPSO Defendants move to dismiss this claim on the basis that "Plaintiffs do not actually allege that they were detained by the OPSO after the legal authority for their detention had expired."[58] Defendants assert that as OPSO had physically transferred Plaintiffs to be housed in the East Carroll Parish facility after their sentencing, Plaintiffs were no longer detained by OPSO. The OPSO Defendants' argument is premised on parsing who was responsible for the detention of these men during the period of over detention, and ignores the fact that although Plaintiffs were in the physical custody of East Carroll, they remained in a state of legal transition between the OPSO and the DPS&C. This may be a disputed fact, but it is not one which is before

---

[56] Rec. Doc. 4 ¶¶ 46-47, 55, 67, 69, 74, 77-78.
[57] Rec. Doc. 4 ¶¶ 48, 70.
[58] Rec. Doc. 50-1 at 13.

the court on a Rule 12 motion to dismiss.[59] Plaintiffs have pled that they were not in fact released from OPSO custody in any meaningful, legal sense when they were transported to East Carroll post-sentencing; OPSO had failed, and continues to fail, to provide for the processing and documentation required to legally transition one into (and out of) the Department of Corrections.[60] Plaintiffs have adequately pled that the OPSO Defendants detained them, and did so for months without legal authority.

> B.  Intentional Infliction of Emotional Distress

To prevail on the state law tort of intentional infliction of emotional distress, a plaintiff must show "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). The OPSO Defendants move to dismiss on the basis that Plaintiffs have not pled that Defendants Gusman and Amacker were aware or should have been aware that Plaintiffs faced the risk of over detention due to the actions of OPSO employees.

Here, Plaintiffs have stated that the OPSO Defendants knew that Plaintiffs were at risk of over detention due to the actions of OPSO officials. As detailed above, Plaintiffs have adequately

---

[59] In the motions to dismiss filed in this proceeding, each Defendant has argued that Plaintiffs have failed to state a valid cause of action as to their claim of false imprisonment. Each Defendant relies on an assertion that Plaintiffs were not in his or her custody or that he or she was not the entity responsible for Plaintiffs' detention. Rec. Doc. 17-1 at 16; Rec. Doc. 21-1 at 15; Rec. Doc. 22-1 at 5. The defendants point to another defendant (or group of defendants) named in this case as the culpable party. Taking as true Plaintiffs' assertion that they were each held in custody for months beyond the dates that they were entitled to release, it is impossible that none of the named Defendants detained Plaintiffs without legal authority – the necessary showings for false imprisonment.

[60] Rec. Doc. 4 ¶¶ 14, 21, 42, 61, 79.

pled that the OPSO Defendants' failure to both institute appropriate policies and to train and supervise staff, directly resulted in their months-long over detention. In fact, Plaintiffs have pled that it was OPSO's practice to transfer DPS&C-sentenced prisoners without timely completing or providing documentation necessary for their release. Further, Plaintiffs have pled that Defendant Amacker was personally and directly responsible for this failure of OPSO to provide the records which would ensure Plaintiffs' processing and release. And as detailed above, Defendants Gusman and Amacker and their OPSO staff were directly notified of the over detention of Plaintiffs Crittindon and Burse. Such unlawful deprivation of liberty predictably resulted in severe emotional distress to the Plaintiffs.[61] Taking these facts as true, Plaintiffs have adequately pled a valid claim for intentional infliction of emotion distress by the OPSO Defendants.

### C. Due Process

As Defendants argue in their Motion to Dismiss,[62] the due process protections provided by the Louisiana Constitution are coextensive with the due process protections provided under federal law. For the reasons Plaintiffs have adequately stated a claim against the OPSO Defendants for the deprivation of their federal due process rights, Plaintiffs have also appropriately pled their state law due process claim as to these Defendants.

### D. Vicarious Liability

But further, Defendant Gusman has been sued in his official capacity, and Louisiana Civil Code Article 2320 imposes vicarious liability on a sheriff, in this capacity, for a deputy's torts and constitutional violations in the course and scope of employment. Jenkins v. Jefferson Parish

---

[61] Rec. Doc. 4 ¶¶ 47, 49, 55, 68-69.
[62] Rec. Doc. 50-1 at 12-13.

Sheriff's Office, 402 So. 2d 669, 669 (La. 1981); Riley v. Evangeline Parish Sheriff's Office, 94-C-0202, p. 1 (La. 4/4/94), 637 So. 2d 395, 395; Bellard v. Gautreaux, 675 F.3d 454, 464 (5th Cir. 2012). Thus, any liability for Plaintiffs' claim of violations of state constitutional or tort law against individual deputies of OPSO will be imposed on the Sheriff in his official capacity.

Louisiana Civil Code article 2320 states in part:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the function in which they are employed . . . In the above cases, responsibility only attaches, when the masters or employers . . . might have prevented the act which cause the damage, and have not done it.

This code provision is read in conjunction with La. R.S. § 42:1441, which limits the liability of the state for damages caused by, among others, Sheriffs and their employees. The statute preserves individual and vicarious liability, however, noting that it "shall not be construed to affect any personal liability which may arise from damage caused by any . . . sheriff . . . or the employee of any such public officer." La. R.S. § 42:1441(B); see also Jenkins v. Jefferson Parish Sheriff's Office, 402 So. 2d 669 (La. 1981) (discussing the evolution of sheriffs' vicarious liability for deputies' actions under Louisiana law); Washington v. Gusman, 15-0177 (La. App. 4 Cir. 10/14/15), 183 So. 3d 510 (finding sheriff vicariously liable for negligent acts of his deputies).

## CONCLUSION

As detailed above, the OPSO Defendants are not entitled to qualified immunity and Plaintiffs have adequately pled valid claims for relief. This Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

*/s/ Emily M. Washington*
Emily M. Washington, La. Bar No. 34143, T.A.
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
emily.washington@macathurjustice.org

Katie M. Schwartzmann, La. Bar No. 30295
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
katie.schwartzmann@macarthurjustice.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system.

*/s/ Emily M. Washington*