1          UNITED STATES DISTRICT COURT

2          MIDDLE DISTRICT OF LOUISIANA

3

4   JESSIE CRITTINDON, ET AL    *    CIVIL ACTION
                                *
5   VERSUS                      *    NO. 17-512
                                *
6   MARLIN GUSMAN, ET AL        *    SEPTEMBER 18, 2018
    * * * * * * * * * * * * * * *

7

8

9          MOTION TO DISMISS BY GARY MAYNARD, MOTION
    TO DISMISS BY ANGELA GRIFFIN, JAMES LEBLANC, AND PERRY STAGG;
10    MOTION TO DISMISS BY JOHNNY HEDGEMON, EDWARD KNIGHT, AND
    WYDETTE WILLIAMS; AND MOTION TO DISMISS BY COREY AMACKER AND
11       MARLIN GUSMAN BEFORE THE HONORABLE SHELLY D. DICK
              UNITED STATES CHIEF DISTRICT JUDGE

12

13

14  APPEARANCES:

15  FOR THE PLAINTIFFS:          RODERICK & SOLANGE MACARTHUR
                                 JUSTICE CENTER
16                               BY:  EMILY M. WASHINGTON, ESQ.
                                      JAMES W. CRAIG, ESQ.
17                               4400 S. CARROLLTON AVENUE
                                 NEW ORLEANS, LOUISIANA 70119
18
    FOR THE DEFENDANTS, MARLIN   ORLEANS PARISH SHERIFF'S OFFICE
19  GUSMAN AND COREY AMACKER:    BY:  BLAKE J. ARCURI, ESQ.
                                 2800 PERDIDO STREET
20                               NEW ORLEANS, LOUISIANA 70119

21  FOR THE DEFENDANT, GARY      STANLEY, REUTER, ROSS, THORNTON
    MAYNARD:                     & ALFORD, LLC
22                               BY:  MATTHEW JAMES PAUL, ESQ.
                                 909 POYDRAS STREET, SUITE 2500
23                               NEW ORLEANS, LOUISIANA 70112

24
    FOR THE DEFENDANTS,          USRY, WEEKS & MATTHEWS
25  JOHNNY HEDGEMON, EDWARD      BY:  TIMOTHY R. RICHARDSON, ESQ.
    KNIGHT, AND WYDETTE               SHANE BRYANT, ESQ.

```
 1   WILLIAMS:                      1615 POYDRAS STREET, SUITE 1250
                                    NEW ORLEANS, LOUISIANA 70112
 2
     FOR THE DEFENDANTS, ANGELA     LOUISIANA DEPARTMENT OF JUSTICE
 3   GRIFFIN, PERRY STAGG, AND      BY:  JAMES G. EVANS, ESQ.
     JAMES LEBLANC:                 1885 NORTH THIRD STREET, FLOOR 4
 4                                  BATON ROUGE, LOUISIANA 70802

 5

 6   OFFICIAL COURT REPORTER:       SHANNON L. THOMPSON, CCR.
                                    UNITED STATES COURTHOUSE
 7                                  777 FLORIDA STREET
                                    BATON ROUGE, LOUISIANA 70801
 8                                  (225) 389-3567

 9         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
                COMPUTER-AIDED TRANSCRIPTION SOFTWARE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                        (SEPTEMBER 18, 2018)
2           THE COURT:  GOOD MORNING.  BE SEATED.
3                OKAY.  CALL THE CASE, PLEASE.
4           THE DEPUTY CLERK:  DOCKET NO. 17, CIVIL, 512, JESSIE
5    CRITTINDON VERSUS MARLIN GUSMAN, ET AL.
6           THE COURT:  OKAY.  COUNSEL, MAKE YOUR APPEARANCES,
7    PLEASE.
8           MS. WASHINGTON:  EMILY WASHINGTON AND JAMES CRAIG
9    HERE ON BEHALF OF THE PLAINTIFFS.
10          THE COURT:  OKAY.
11          MR. RICHARDSON:  TIM RICHARDSON AND SHANE BRYANT ON
12   BEHALF OF THE DEFENDANTS WARDEN JOHNNY HEDGEMON, WARDEN EDWARD
13   KNIGHT, AND SHERIFF WYDETTE WILLIAMS.
14          THE COURT:  ALL RIGHT.  THAT'S EAST CARROLL?
15          MR. RICHARDSON:  YES.
16          THE COURT:  OKAY.
17          MR. PAUL:  GOOD MORNING, YOUR HONOR.  MATTHEW PAUL
18   HERE ON BEHALF OF GARY MAYNARD.
19          THE COURT:  OKAY.
20          MR. EVANS:  GOOD MORNING, YOUR HONOR.  JAMES EVANS ON
21   BEHALF OF THE DOC DEFENDANTS GRIFFIN, STAGG, AND LEBLANC.
22          MR. ARCURI:  GOOD MORNING, YOUR HONOR.  BLAKE ARCURI
23   HERE ON BEHALF OF THE OPSO DEFENDANTS SHERIFF MARLIN GUSMAN AND
24   DEPUTY COREY AMACKER.
25          THE COURT:  COUNSEL, WE ARE HERE ON SEVERAL MOTIONS
```

11:05  1    TO DISMISS.

2              MR. PAUL, I'M GETTING READY TO MAKE YOUR DAY.  I

3    DON'T NEED TO HEAR ARGUMENTS WITH RESPECT TO MR. MAYNARD.

4    APOLOGIZE FOR BRINGING YOU OUT.

5              BUT THE COURT HAS READ THE PLEADINGS, READ THE

6    COMPLAINT, READ THE MOTION TO DISMISS, THE MEMORANDUM IN

7    SUPPORT AND THE OPPOSITION.  THE COURT FINDS THAT MR. MAYNARD,

8    WHO WAS THE INDEPENDENT JAIL COMPLIANCE DIRECTOR AND WHO WAS

9    APPOINTED BY THE COURT UNDER A CONSENT DECREE IN AN EARLIER

10   CASE IS ESSENTIALLY ANALOGOUS TO A COURT-APPOINTED RECEIVER.

11   UNDER THE TERMS OF THE STIPULATED ORDER THAT APPOINTED MR.

12   MAYNARD IN THE *JONES VERSUS GUSMAN* CASE, I BELIEVE IT WAS,

13   INDICATED THAT HE WAS -- ALTHOUGH HE WAS GIVEN FINAL AUTHORITY

14   TO OPERATE THE ORLEANS PARISH JAIL AND FACILITIES, INCLUDING

15   THE PRISONER POPULATION IN THE CUSTODY OF ORLEANS PARISH

16   SHERIFF'S OFFICE, THE STIPULATED ORDER ALSO MADE VERY CLEAR

17   THAT HIS ROLE WAS TO IMPLEMENT THE CONSENT JUDGMENT; THAT HE

18   WAS ANSWERABLE ONLY TO THE COURT; AND THAT HE WAS A

19   REPRESENTATIVE OF THE COURT.

20             BASED ON THE COURT TAKING JUDICIAL NOTICE OF

21   THAT CONSENT DECREE, OR THAT CONSENT ORDER IN THAT PRIOR CASE,

22   IN ADDITION TO THE CASE OF *DAVIS VERSUS BAYLESS* AT 70 F.3D 367,

23   AND THE CASE OF *PLATA VERSUS SCHWARZENEGGER* AT 2005 WESTLAW

24   2932253, NORTHERN DISTRICT OF CALIFORNIA, AND ALSO THE EASTERN

25   DISTRICT OF LOUISIANA'S PRIOR RULING IN *CRAWFORD VERSUS GUSMAN*,

11:07    1    EASTERN DISTRICT, DOCKET NO. 17-CV-13397, THE COURT FINDS THAT

2    MR. MAYNARD ENJOYS JUDICIAL IMMUNITY.  AND NOTWITHSTANDING THE

3    FACT THAT, AS PLAINTIFFS POINT OUT, THE STIPULATED ORDER DID

4    NOT INCLUDE A JUDICIAL IMMUNITY PROVISION OR INDEMNITY

5    LANGUAGE, THE COURT NONETHELESS FINDS THAT THE LAW PROVIDES AS

6    A MATTER OF LAW FOR IMMUNITY AS A QUASI-JUDICIAL OFFICER.  SO

7    THE COURT IS GOING TO GRANT THE MOTION TO DISMISS AS TO MR.

8    MAYNARD.

9            MR. PAUL, YOU'RE WELCOME TO STAY OR YOU'RE

10    WELCOME TO GO, IF YOU WISH.

11        **MR. PAUL:**  THANK YOU, YOUR HONOR.

12        **THE COURT:**  YOU'RE WELCOME.

13            OKAY.  WITH RESPECT TO THE REMAINING MOTIONS,

14    THE WAY THE COURT WANTS TO HANDLE THIS IS LET ME HAVE ARGUMENT

15    FROM COUNSEL FOR DOC, FOLLOWED BY ARGUMENT FROM COUNSEL FOR THE

16    ORLEANS PARISH SHERIFF'S OFFICE ATTORNEYS, FOLLOWED BY ARGUMENT

17    FROM THE EAST CARROLL PARISH SHERIFF'S OFFICE ATTORNEY.  AND

18    THEN I'LL HEAR A REBUTTAL OR OPPOSITION, SO AS IT WERE, TO ALL

19    OF THE ARGUMENTS BY COUNSEL FOR THE PLAINTIFFS.

20            SO, MR. EVANS, THE FLOOR IS YOURS.

21        **MR. EVANS:**  THANK YOU, YOUR HONOR.  NOW, I'LL BE VERY

22    BRIEF FOR THE COURT THIS MORNING.  I JUST WANTED TO POINT OUT

23    TO START, THAT IN REGARDS TO DOC, ONE OF THE CRITICAL ASPECTS

24    OF THIS CASE IS THAT DOC ITSELF IS NOT A DEFENDANT.  INDIVIDUAL

25    MEMBERS OF THE DEPARTMENT OF CORRECTIONS ARE NAMED AS

11:09  1   DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.  AND SO WHAT THAT

2   MEANS FOR PURPOSES OF A RULE 8 PLEADING IS THAT THERE MUST BE

3   ALLEGATIONS OF PERSONAL INVOLVEMENT AND KNOWLEDGE BY THOSE

4   DEFENDANTS.  AND IN THIS CASE, THE DOC DEFENDANTS' CONTENTION

5   IS THAT THE PLEADING IS DEFICIENT IN THAT AREA, AND FOR A

6   NUMBER OF REASONS.

7           THE COMPLAINT OBVIOUSLY DISCUSSES A LOT OF

8   ACTIONS BY EAST CARROLL DEFENDANTS, BY ORLEANS DEFENDANTS, AND

9   OBVIOUSLY THE DOC DEFENDANTS.  HOWEVER, I THINK ONE OF THE

10  ISSUES THAT'S CURRENTLY POPPED UP HERE IS WHO HAD AUTHORITY TO

11  DO WHAT.  AND STATE LAW DISTRIBUTES THE AUTHORITY IN A NUMBER

12  OF WAYS, BUT THE MOST IMPORTANT FOR THE DOC DEFENDANTS IS

13  LOUISIANA CODE OF CRIMINAL PROCEDURE, ARTICLE 892, WHICH

14  PROVIDES THAT THE SHERIFF MUST PROVIDE A STATEMENT TO THE

15  DEPARTMENT WHERE AN INMATE IS SENTENCED.

16          IN THIS CASE, THERE ARE EXPLICIT ALLEGATIONS

17  THAT THE SHERIFF, WHETHER IT BE ORLEANS OR EAST CARROLL, FAILED

18  IN THEIR DUTY TO DO THAT.  BUT BEYOND THAT, YOUR HONOR, THERE'S

19  NO -- THERE'S NOTHING MORE THAN CONCLUSIONARY ALLEGATIONS THAT

20  DEFENDANTS LEBLANC, STAGG, AND GRIFFIN ACTUALLY KNEW ABOUT THE

21  PLIGHT OF THESE THREE DEFENDANTS -- OR ALL OF THE DEFENDANTS IN

22  THE CONSOLIDATED CASES, AND FAILED TO DO ANYTHING ABOUT IT.

23          AND UNDER THE DUE PROCESS CLAUSE, OF COURSE,

24  DELIBERATE INDIFFERENCE IS THE STANDARD UPON WHICH WE'RE

25  LOOKING AT.  AND SO IN TERMS OF PERSONAL INVOLVEMENT THAT WOULD

1    BE -- THAT WOULD THE BASIS OF THAT MOTION TO DISMISS.

2                    HOWEVER, THERE ARE ALLEGATIONS REGARDING FAILURE

3    TO IMPLEMENT A POLICY.  AGAIN, WE'RE LOOKING AT A DELIBERATE

4    INDIFFERENCE.  AND IN THIS CASE, YOUR HONOR, THE COMPLAINT

5    FAILS TO PUT FORTH SUFFICIENT ALLEGATIONS TO SHOW WHAT POLICIES

6    WERE NEEDED TO PREVENT THE ALLEGED VIOLATIONS, WHAT POLICIES

7    WERE IN PLACE THAT CAUSED THE CONSTITUTIONAL VIOLATIONS, AND

8    WHETHER THESE THREE DEFENDANTS KNEW ABOUT THAT.  AND THOSE ARE

9    CRITICAL ELEMENTS OF ANY DELIBERATE INDIFFERENCE CASE.  AND SO

10   FOR THOSE REASONS, YOUR HONOR, THE DEFENSE OBVIOUSLY CONTENDS

11   THAT THE DOC DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

12   UNDER 1983.

13                   AND VERY BRIEFLY FOR THE STATE LAW CLAIMS,

14   THERE'S TWO THAT I -- THE TWO BIG ONES, OBVIOUSLY, ARE FALSE

15   IMPRISONMENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

16   AND, YOUR HONOR, SIMPLY PUT, LOUISIANA STATE LAW PROVIDES THAT

17   THE SHERIFF HAS ABSOLUTE CONTROL AND AUTHORITY OVER THE INMATES

18   IN ITS STEAD, AND THAT INCLUDES THE ACTUAL CUSTODY OF THOSE

19   INMATES.

20                   AND SO WHERE WE ARE HERE IS THE COMPLAINT IS

21   VERY CLEAR WHERE THESE INMATES WERE AT ALL TIMES.  THEY WERE

22   EITHER AT ORLEANS OR EAST CARROLL.  AT NO TIME WERE THEY IN THE

23   CUSTODY OF DPS&C, PHYSICAL CUSTODY.  LEGAL CUSTODY IN DPS&C;

24   PHYSICAL CUSTODY IN THE SHERIFF.

25                   **THE COURT:**  WHICH PUTS THIS COURT IN QUITE A

1   CONUNDRUM.  YOU HAVE LEGAL CUSTODY, AND THEN YOU HAVE JAILER

2   CUSTODY.

3           **MR. EVANS:**  RIGHT.

4           **THE COURT:**  YOU DON'T OBVIOUSLY DISPUTE THAT THESE

5   GENTLEMEN  -- I ASSUME THEY'RE BOTH MEN, THAT'S PROBABLY A BAD

6   ASSUMPTION -- BUT I ASSUME THE PLAINTIFFS ARE MEN, AND YOU

7   DON'T DISPUTE THAT THEY HAVE AN ABSOLUTE CONSTITUTIONAL RIGHT

8   TO BE RELEASED IN ACCORDANCE WITH THE COURT'S JUDGMENT OR

9   SENTENCE, AND THAT THEY HAVE AN ABSOLUTE CONSTITUTIONAL RIGHT

10  NOT TO BE DETAINED BEYOND WHAT SHOULD BE THEIR PROPER RELEASE

11  DATE, CORRECT?

12          **MR. EVANS:**  I WOULD NOT DISPUTE THAT, YOUR HONOR.

13          **THE COURT:**  SO VIOLATION OF A CONSTITUTIONAL LAW, WE

14  ARE NOT ARGUING ABOUT THAT.  WE ARE ARGUING ABOUT WHETHER OR

15  NOT IT WAS WHATEVER DOC DID OR DIDN'T DO WAS OBJECTIVELY

16  REASONABLE.

17          **MR. EVANS:**  RIGHT.  AND SPECIFICALLY IN REGARDS TO

18  1983 CLAIMS.

19          **THE COURT:**  RIGHT.

20          **MR. EVANS:**  THAT IS CORRECT, YOUR HONOR.

21          **THE COURT:**  OKAY.

22          **MR. EVANS:**  NOW, IN REGARDS TO THE STATE LAW CLAIMS,

23  OF COURSE -- AND THIS IS WHERE IT BECOMES VERY IMPORTANT THAT

24  DPS&C ITSELF IS NOT A DEFENDANT.  ALTHOUGH DPS&C MAY HAVE HAD

25  LEGAL CUSTODY OVER THESE INMATES, DEFENDANTS LEBLANC, STAGG,

1   AND GRIFFIN, THEY WERE NOT THE JAILERS OF THESE INDIVIDUALS.

2   AND SO TO THE EXTENT THAT THE PLAINTIFF IS SAYING THAT THEY

3   FALSELY IMPRISONED THESE INMATES, WELL, THAT CLAIM JUST -- IT

4   FAILS AS A MATTER OF LAW BECAUSE THEY WERE NOT THE JAILERS, NOR

5   DID THEY PERSONALLY DETAIN THESE INMATES, WHICH IS THE

6   PREREQUISITE FOR A FALSE IMPRISONMENT CLAIM.

7              AND SIMILARLY FOR THE IIED CLAIM, YOUR HONOR,

8   THERE'S SIMPLY INSUFFICIENT FACTS HERE TO SHOW THAT, ONE, THE

9   DEFENDANTS ACTED EXTREME OR OUTRAGEOUS; OR TWO, THAT THEY

10  INTENDED TO INFLICT EMOTIONAL STRESS UPON THE INMATES.

11             WHAT THE COMPLAINT SHOWS, OR WHAT IT ALLEGES, IS

12  THAT THEY MAY HAVE FAILED IN SOME DUTIES TO CALCULATE TIME, OF

13  COURSE.  AS I MENTIONED, THE SHERIFF HAS A DUTY TO PROVIDE

14  THAT.  BUT THERE'S NO ALLEGATIONS THAT THEY KNEW THAT THESE

15  INDIVIDUALS WERE OVER-DETAINED; THAT THEY WANTED TO INFLICT

16  EMOTIONAL STRESS BY OVER-DETAINING THEM; AND THAT THEY DID SO.

17  AND SO, YOUR HONOR, FOR ALL THOSE REASONS, THE DEFENDANTS WOULD

18  RESPECTFULLY REQUEST THAT THEIR MOTION TO DISMISS BE GRANTED.

19        **THE COURT:**  OKAY.  ALL RIGHT.  LET ME HEAR FROM

20  COUNSEL FOR ORLEANS PARISH.

21        **MR. ARCURI:**  GOOD MORNING, JUDGE.  I'LL ALSO BE

22  BRIEF.

23        **THE COURT:**  AND YOU'RE MR. ARCURI, RIGHT?

24        **MR. ARCURI:**  YES, YOUR HONOR.  BLAKE ARCURI --

25        **THE COURT:**  OKAY.

1       **MR. ARCURI:** -- ON BEHALF OF SHERIFF GUSMAN AND
2  DEPUTY AMACKER.
3            SO STARTING OUT, JUST EVEN BEFORE QUALIFIED
4  IMMUNITY I WANTED TO ADDRESS ONE ISSUE WHICH I THINK KIND OF
5  PIGGYBACKS OFF OF WHAT DOC'S COUNSEL SAYS.  THERE'S AN
6  INDIVIDUAL CAPACITY CLAIM AGAINST SHERIFF GUSMAN WHICH, AS YOU
7  KNOW, THE PLAINTIFFS WOULD HAVE TO SHOW THAT HE WAS DIRECTLY
8  INVOLVED.  THEY'VE MADE A FORMULAIC RECITATION SAYING SHERIFF
9  GUSMAN IS DIRECTLY INVOLVED, AND THAT'S BASED ON THE FACT THAT
10  HE HAS ACCESS TO COMPUTER SYSTEMS WHICH SHOW RELEASE DATES FOR
11  ALL THE INMATES IN ORLEANS PARISH.  BY THAT LOGIC, EVERYONE IN
12  THIS ROOM IS DIRECTLY INVOLVED WITH THE SENTENCING YOUR HONOR
13  JUST HAD BECAUSE WE HAVE ACCESS TO THE SIMILAR KIND OF MINUTES
14  THAT EXIST IN ORLEANS PARISH, THAT SHERIFF GUSMAN WOULD HAVE
15  BEEN INVOLVED IN.
16            THE SECOND LEVEL OF INVOLVEMENT THAT THEY SAY
17  SHERIFF GUSMAN HAD WAS THAT IN DECEMBER OF 2016, RIGHT AT THE
18  END OF DECEMBER, THE PLAINTIFFS' COUNSEL SENT A LETTER TO
19  SHERIFF GUSMAN NOTIFYING HIM AND THE DIRECTOR OF THIS POTENTIAL
20  OVER-DETENTION AFTER THE DATE AT WHICH THE SHERIFF HAD ANY
21  CONTROL OVER THE JAIL.  SO THIS IS MONTHS AFTER THIS ALLEGED
22  OVER-DETENTION STARTED AND ABOUT TWO WEEKS BEFORE THEY WERE
23  RELEASED, THAT IS THE DIRECT INVOLVEMENT THAT THEY ARE PLACING
24  UPON SHERIFF GUSMAN.  SO BEFORE I EVEN ADDRESS QUALIFIED
25  IMMUNITY, I WANTED TO BRING THAT UP.

1    GOING TO QUALIFIED IMMUNITY, I THINK THE CASE

2   THAT THE COURT NEEDS TO LOOK AT IS *PORTER VERSUS EPPS*, WHICH IS

3   VERY SIMILAR TO THE FACTS HERE.  IN THAT CASE, THE MISSISSIPPI

4   DEPARTMENT OF CORRECTIONS OFFICIALS GOT AN INMATE WITH A

5   SENTENCE OF FIVE YEARS, FOUR YEARS OF WHICH WAS SUSPENDED, AND

6   THEY MADE THE DECISION ON THEIR OWN, PER THEIR OWN POLICY, TO

7   UN-SUSPEND THE SENTENCE, TO SIMPLY ENFORCE IT AND DETAIN THE

8   INMATE.  AND THEY WENT TO TRIAL, AND IT WAS DETERMINED THAT

9   THEY DID, IN FACT, OVER-DETAIN THE INMATE; THAT THEY VIOLATED

10  HIS RIGHTS BECAUSE THEY SHOULD NOT HAVE SIMPLY UN-SUSPENDED A

11  JUDGE'S SENTENCE, ONLY A JUDGE CAN DO THAT.  HOWEVER, THE FIFTH

12  CIRCUIT LOOKED AT IT AND FOUND THAT THE EVIDENCE DID NOT SHOW

13  THAT A REASONABLE PERSON WOULD HAVE HAD ACTUAL OR CONSTRUCTIVE

14  NOTICE THAT MDOC'S POLICES, WITH REGARD TO THE RECORDS

15  DEPARTMENT, WOULD RESULT IN INSTANCES OF FALSE IMPRISONMENT.

16  NOW, THIS IS A CASE IN WHICH THEY TOOK A DIRECT STEP TO

17  OVER-DETAIN AN INMATE, AND THERE WAS -- IT WAS FOUND THAT THERE

18  WAS NO ACTUAL OR CONSTRUCTIVE NOTICE THAT THIS POLICY WOULD BE

19  A PROBLEM.

20    IN THIS CASE, WE HAVE A SITUATION WHICH, IF YOU

21  READ THE PLEADINGS, IT'S NEGLIGENCE AT BEST.  NOBODY HAS

22  ALLEGED, CERTAINLY NOT AMACKER OR GUSMAN, TO SAY CRITTINDON AND

23  BURSE WERE JUST SENTENCED, I KNOW THEY'RE SUPPOSED TO GET OUT,

24  I'M GOING TO DO WHAT I CAN TO OVER-DETAIN THEM.  LEAVE THEM IN

25  THE DARK, SHIP THEM OFF SOMEWHERE.  AT BEST, YOU'RE LOOKING AT

1    NEGLIGENCE.

2              THERE CERTAINLY IS NO ACTUAL OR CONSTRUCTIVE

3    NOTICE.  THERE CERTAINLY ARE NO OTHER INMATES MENTIONED OUT OF

4    THE HUNDREDS TO WHOM THIS SAME POLICY APPLIED THAT WENT TO EAST

5    CARROLL PARISH.  SO AT BEST, YOU HAVE AN ACCIDENT.

6              I JUST DON'T SEE HOW THERE COULD BE ANY SHOWING

7    THAT -- OR THERE HADN'T BEEN ANY FACTS PLED -- THAT THEIR

8    ACTIONS OF TAKING DOC INMATES IN A JAIL WHERE THEY DON'T FIT,

9    SHIPPING THEM TO ANOTHER PARISH, WHO HOLDS DOC INMATES UNTIL

10   THE END OF THEIR SENTENCES, IS OBJECTIVELY UNREASONABLE, AND

11   THAT IT WOULD LEAD TO A CONSTITUTIONAL VIOLATION.

12             MOVING ON FROM THAT --

13        **THE COURT:**  DOES ORLEANS PARISH HAVE -- WAS ORLEANS

14   PARISH A JAILER IN THIS CASE?

15        **MR. ARCURI:**  YES, WE WERE A JAILER.  AT SOME POINT

16   BEFORE THEY WERE SENTENCED THEY CAME IN FOR THEIR TRIAL -- OR,

17   I'M SORRY, PLEA AND SENTENCING, AND THEN THEY WERE SENT BACK TO

18   EAST CARROLL PARISH, SO WE WERE A JAILER.

19        **THE COURT:**  WELL, YOU DELEGATED YOUR JAILING

20   RESPONSIBILITY, OR YOU CONTRACTED AWAY YOUR JAILING

21   RESPONSIBILITY TO EAST CARROLL PARISH, BUT ORLEANS PARISH WAS

22   THE JAILER, CORRECT?

23        **MR. ARCURI:**  CORRECT, UNTIL --

24        **THE COURT:**  AND --

25        **MR. ARCURI:**  I'M SORRY, YOUR HONOR.

1     **THE COURT:**  -- AS THE JAILER, YOU WOULD AGREE WITH ME

2   THAT UNDER THE LAW UNDER VERY WELL-ESTABLISHED FIFTH CIRCUIT

3   PRECEDENCE, THE JAILER HAS THE DUTY TO MAKE SURE THAT PERSONS

4   IN THAT JAILER'S CUSTODY DO NOT SERVE MORE THAN THEIR SENTENCE;

5   THAT THEY DON'T -- THAT THEY AREN'T OVER-INCARCERATED IN TERMS

6   OF LENGTH OF TIME.  IS THAT CORRECT?

7     **MR. ARCURI:**  I THINK TO SOME EXTENT THAT'S CORRECT.

8   HOWEVER, THE MOMENT THE JUDGE SENTENCED THE INMATE TO THE LEGAL

9   CUSTODY OF THE DEPARTMENT OF CORRECTIONS, THE JAILER, IN THE

10   SENSE OF MARLIN GUSMAN, HAS NO AUTHORITY TO RELEASE THAT INMATE

11   UNTIL DOC ISSUES A RELEASE.

12     **THE COURT:**  ONCE THEY BECOME A DOC PRISONER, WHAT IS

13   THE SHERIFF'S OBLIGATION?

14     **MR. ARCURI:**  TO TRANSFER THEM TO DOC CUSTODY.

15     **THE COURT:**  WITH NO OTHER OBLIGATION?  NO REPORTING

16   OBLIGATION TO DOC?  DOC SAYS THAT YOU HAVE AN OBLIGATION UNDER

17   892 TO REPORT SOME RETENTION INFORMATION.

18     **MR. ARCURI:**  THAT'S CORRECT.  AND OF COURSE IF YOU

19   READ THE COMPLAINT, IT'S OUR POSITION THAT THAT REPORTING WAS

20   MADE.  THE COMPLAINT SOMEHOW SUGGESTS THAT MAYBE IT WAS MADE;

21   MAYBE IT WASN'T MADE.  SO EACH ONE OF US CAN COME UP HERE AND

22   SAY THE COMPLAINT SAID IT DIDN'T HAPPEN.

23     **THE COURT:**  IF THE COMPLAINT SAYS THAT THE REPORTING

24   WASN'T MADE, IS THAT A SUFFICIENT FACTUAL BASIS TO SAY THAT

25   ORLEANS PARISH WAS NOT OBJECTIVELY REASONABLE?

1      **MR. ARCURI:**  NO, I DON'T BELIEVE IT WAS.

2          **THE COURT:**  I DON'T CARE WHAT YOU BELIEVE.  WHAT DOES

3   THE LAW SAY?

4      **MR. ARCURI:**  WELL, I BELIEVE THAT --

5          **THE COURT:**  I DON'T CARE WHAT YOU BELIEVE.  WHAT DOES

6   THE LAW SAY?

7      **MR. ARCURI:**  THERE WOULD HAVE TO BE ACTUAL OR

8   CONSTRUCTIVE NOTICE THAT THIS POLICY WOULD HAVE LED TO THAT;

9   THAT THIS WAS NOT ONE SIMPLE MISTAKE, WHEN WE'RE TALKING ABOUT

10  QUALIFIED IMMUNITY, BUT THAT THERE WAS ACTUAL OR CONSTRUCTIVE

11  NOTICE THAT THE POLICY THAT AMACKER WAS IMPLEMENTING, AND THAT

12  THE SHERIFF AND MAYNARD HAD PUT IN PLACE, WOULD HAVE LED TO

13  THIS.

14          **THE COURT:**  IS THERE AN ALLEGATION THAT THE ORLEANS

15  PARISH SHERIFF'S OFFICE FAILED IN ITS OBLIGATIONS TO PROVIDE

16  WHATEVER KIND OF TERM DATA IT WAS SUPPOSED TO PROVIDE TO DOC?

17  IS THERE AN ALLEGATION OF THAT?

18      **MR. ARCURI:**  THERE IS.  AND IF THAT ALLEGATION DOES

19  NOT RISE TO THE LEVEL OF BEING OBJECTIVELY UNREASONABLE OR

20  DELIBERATELY INDIFFERENT, MEANING -- IN OTHER WORDS, I THINK TO

21  SUSTAIN THAT ALLEGATION AS A CONSTITUTIONAL VIOLATION, THEY

22  HAVE TO SHOW DELIBERATE INDIFFERENCE.  THEY HAVE TO SHOW THAT

23  AMACKER IS BASICALLY SITTING THERE SAYING, I KNOW I'VE GOT TO

24  DO THIS, BUT I'M NOT GOING TO SEND IT WITH HIM.  IT CAN'T BE AN

25  ACCIDENT.  IT CAN'T BE A MISTAKE.

1    **THE COURT:**  GOTCHA.

2    **MR. ARCURI:**  IT CAN'T BE NEGLIGENCE.

3    **THE COURT:**  AND WHAT DO THEY PLEAD?  THEY PLEAD YOU

4  HAD AN OBLIGATION UNDER 892.

5    **MR. ARCURI:**  YES.

6    **THE COURT:**  AND YOU DID HAVE AN OBLIGATION UNDER 892,

7  YOU'RE CONCEDING THAT; IS THAT CORRECT?

8    **MR. ARCURI:**  ABSOLUTELY.

9    **THE COURT:**  SO YOU HAVE A LEGAL DUTY.  ALL RIGHT?  DO

10  THEY PLEAD THAT YOU FAILED TO ABIDE YOUR LEGAL DUTY?

11    **MR. ARCURI:**  YES, BUT THEY DO NOT --

12    **THE COURT:**  THEN WHY ISN'T THAT DELIBERATE

13  INDIFFERENCE?

14    **MR. ARCURI:**  FAILED TO ABIDE -- FAIL TO COMPLY WITH

15  MY LEGAL DUTY COULD BE NEGLIGENCE.  IN OTHER WORDS, IF IT'S A

16  MISTAKE, IT'S NEGLIGENCE.  IF IT'S DELIBERATE INDIFFERENCE,

17  THEY WOULD HAVE SAID, "WE KNEW WE HAD TO BRING THIS PAPERWORK

18  FOR THESE TWO, AND WE TURNED A BLIND EYE."

19    **THE COURT:**  RIGHT.

20    **MR. ARCURI:**  WHICH IS THE LANGUAGE THE COURTS USED.

21    **THE COURT:**  RIGHT.

22    **MR. ARCURI:**  AND DIDN'T DO IT.

23    **THE COURT:**  RIGHT.  IF THEY ACCIDENTLY THREW THE

24  PIECE OF PAPER THEY WERE SUPPOSED TO SEND TO DOC IN THE TRASH,

25  I AGREE WITH YOU, THAT WOULD BE NEGLIGENCE.

1 **MR. ARCURI:** CORRECT.

2 **THE COURT:** BUT --

3 **MR. ARCURI:** OR IF THE PAPER WAS LOST IN A STACK OF

4 OTHER PAPERS.

5 **THE COURT:** RIGHT. OKAY. AND SO HOW DO YOU EXPLAIN

6 THAT THIS HAPPENED TO MULTIPLE PERSONS THAT WERE IN THE CUSTODY

7 OF ORLEANS PARISH SHERIFF'S DEPARTMENT? WHEN I SAY THE WORD

8 *CUSTODY*, I MEAN AS THE JAILER.

9 **MR. ARCURI:** I THINK IT'S WHAT YOU REFERRED TO AS

10 MULTIPLE. IT DID HAPPEN TO MORE THAN ONE PLAINTIFF IN THIS

11 CASE. IT HAPPENED TO AN EXTREMELY SMALL PERCENTAGE OF ALL THE

12 PEOPLE WHO WERE UP THERE HAVING THIS SAME THING OCCUR TO THEM,

13 IN A SENSE THAT THEIR PAPERWORK WAS PROCESSED, IT WAS SENT UP.

14 THE PROCESS WORKS FLAWLESSLY.

15 THIS IS THE LARGEST VOLUME SENTENCING AND

16 PROSECUTION COURT IN THE STATE OF LOUISIANA. THERE ARE 20,000

17 PEOPLE BOOKED A YEAR IN ORLEANS PARISH, AND WE HAVE TWO THAT

18 WERE FOUND INITIALLY IN DECEMBER IN EAST CARROLL WHERE THIS

19 HAPPENED TO. AND AFTER AN EXHAUSTIVE SEARCH THAT NO OTHER

20 ATTORNEYS HAVE ACCESS TO -- THIS IS NOT PUBLIC RECORDS. THIS

21 IS -- THEY HAVE ACCESS UNFETTERED TO EVERY DOCUMENT IN THE

22 PRISON, THEY FOUND A THIRD. SO OF ALL THESE PEOPLE IN ORLEANS

23 PARISH, AND OF ALL THE HUNDREDS WHO WERE SENT TO EAST CARROLL,

24 THEY HAVE FOUND THREE.

25 SO IT CERTAINLY DOESN'T SEEM TO ME THAT ANYBODY

1   WAS ON NOTICE THERE WAS A PROBLEM UNTIL THEIR LETTER IN

2   DECEMBER OF 2016.  AND THERE WERE NO INSTANCES BEFORE THAT

3   WHERE THEY CAN SAY, CERTAINLY FOR THE MONELL CLAIM, "LOOK, THE

4   SHERIFF SHOULD HAVE KNOWN THERE WAS A PROBLEM, SHOULD HAVE

5   KNOWN THERE WAS A PROBLEM."  WE FOUND OUT ABOUT BOTH OF THESE

6   ON DECEMBER 27, 28, 2016, WHICH WAS THE FIRST NOTICE WE HAD OF

7   THE PROBLEM.  NOW, THEY SAY THE FAMILY WAS CALLING, QUOTE, "THE

8   JAIL."  THEY DON'T SAY THE FAMILY SPOKE TO AMACKER OR GUSMAN.

9   THEY DON'T SAY WHO THE FAMILY SPOKE TO.

10           SO I THINK MY ISSUE HERE IS DRAWING THE LINE

11  BETWEEN AN ACCIDENT, NEGLIGENCE, A PAPERWORK ERROR, AND WHETHER

12  OR NOT AMACKER OR GUSMAN SAID, "I KNOW THAT CRITTINDON AND

13  BURSE NEED TO GET OUT TODAY.  I'M NOT GOING TO DO ANYTHING

14  ABOUT IT.  I'M GOING TO TURN A BLIND EYE AND LET THEM SIT UP

15  THERE."

16           **THE COURT:**  AND SO IT'S YOUR ARGUMENT THAT, AS PLED,

17  THE ALLEGATIONS IN THE COMPLAINT PLEAD NOTHING MORE THAN

18  NEGLIGENCE OR A PAPERWORK ERROR OR JUST BASICALLY A 2315

19  BREACH?

20           **MR. ARCURI:**  THAT'S CORRECT, YOUR HONOR.  BECAUSE

21  WHILE THE PLEADING DOES SAY GUSMAN ACTED WITH DELIBERATE

22  INDIFFERENCE.  AMACKER ACTED WITH DELIBERATE INDIFFERENCE.

23           **THE COURT:**  RIGHT.  I'M AWARE OF THE FACTS.

24           **MR. ARCURI:**  THOSE ARE FORMULAIC RECITATIONS OF

25  ELEMENTS.  YES, THAT'S MY CONTENTION, JUDGE.  SO UNLESS THE

1    COURT HAS ANY OTHER FURTHER QUESTIONS -- I'D JUST ADD THAT, I

2    THINK I BRIEFLY COVERED IT, WITH RESPECT TO THE MONELL CLAIM,

3    THE OFFICIAL CAPACITY CLAIM AGAINST SHERIFF GUSMAN, THEY WOULD

4    HAVE TO SHOW A PATTERN OF SUFFICIENTLY NUMBERED PRIOR INCIDENTS

5    OF THIS HAPPENING.  IT CAN'T BE OVER-DETENTIONS IN GENERAL.  IT

6    HAS TO BE SPECIFIC OVER-DETENTIONS THAT HAPPENED IN THIS

7    SIMILAR CIRCUMSTANCE.  AND THAT COMES FROM *CONNICK*, WHERE YOU

8    CAN'T JUST SHOW *BRADY* VIOLATIONS.  YOU HAVE TO SHOW *BRADY*

9    VIOLATIONS THAT AROSE FROM A PROSECUTING ATTORNEY OVER BLOOD OR

10   SCIENTIFIC EVIDENCE.

11            SO I THINK THAT THEY WOULD HAVE TO SHOW THAT

12   THERE WAS SOMETHING HAPPENING BEFORE THIS CASE AROSE THAT WOULD

13   HAVE PUT SHERIFF GUSMAN ON NOTICE THAT HE HAD TO MAKE SOME

14   CHANGE WITH THIS PROCEDURE, OR THIS WAS BOUND TO HAPPEN.

15            **THE COURT:**  OKAY.  LET ME JUST ASK YOU WHILE I'M AT

16   IT BECAUSE YOUR CO-COUNSEL FOR EAST CARROLL MADE THE SAME

17   ARGUMENT.  WHAT IS THIS DUPLICATIVE ARGUMENT THAT YOU MAKE ON

18   BEHALF OF MR. AMACKER?  I MEAN YOU SAY THAT MR. AMACKER DOESN'T

19   HAVE OFFICIAL CAPACITY OF LIABILITY BECAUSE IT'S DUPLICATIVE OF

20   THE ALLEGATIONS AGAINST GUSMAN.  I'M NOT FOLLOWING THAT

21   ARGUMENT.

22            **MR. ARCURI:**  WELL --

23            **THE COURT:**  MAYBE I'M MISSING SOMETHING.

24            **MR. ARCURI:**  SO THE OFFICIAL CAPACITY CLAIM IS

25   AGAINST THE SHERIFF'S OFFICE, NO MATTER WHO THEY'RE GOING TO

BRING IT AGAINST.  MY ISSUE WITH THE OFFICIAL CAPACITY CLAIM

AGAINST AMACKER, OR THE SUPERVISORY LIABILITY CLAIM, IS THAT

THIS IS A CAST-ALL PETITION WHERE GUSMAN IS THE SUPERVISOR THAT

WRITES ALL THE POLICIES, MAYNARD IS ALSO THAT.  WE'RE GOING TO

SUE GUSMAN IN HIS INDIVIDUAL CAPACITY.  WE'RE GOING TO SUE

AMACKER, WHO'S A DEPUTY, NOT A SUPERVISOR, IN HIS INDIVIDUAL

CAPACITY.  AND THEN WE'RE GOING TO TRY AND GET AN OFFICIAL

CAPACITY CLAIM, OR A SUPERVISORY LIABILITY CLAIM, JUST BY

SAYING HE'S A SUPERVISOR.  THEY SUED ONE DEPUTY WHO MERELY

PROCESSES PAPERWORK AND SAID HE WRITES POLICIES, PATTERNS, AND

PROCEDURES OF THE SHERIFF'S OFFICE.  AND I GUESS THAT WAS MY

CONCERN.  I THINK THE SUPERVISORY LIABILITY CLAIMS AGAINST A

DEPUTY, WHO IS THE ONE PERSON THAT SENDS PAPERWORK OVER, JUST

SIMPLY HAVE NO MERIT.  I MEAN THIS IS A -- LITERALLY, A

PAPER-PUSHER, WHO IS NOT -- THEY DID NOT MAKE ANY COMPLAINT.

**THE COURT:** BUT I CAN'T FIND THAT AS A MATTER OF FACT

ON A 12(B)(6).  I MEAN THE ALLEGATIONS IN THE COMPLAINT ARE

THAT GUSMAN DELEGATED RESPONSIBILITY FOR ENACTING POLICIES AND

PROCEDURES TO MAKE SURE THAT ALL THIS REPORTING WAS DONE, AND

THAT THESE PEOPLE WEREN'T OVER-INCARCERATED.  IF THOSE ARE THE

ALLEGATIONS OF THE COMPLAINT, WHY CAN'T AMACKER BE RESPONSIBLE

IN AN OFFICIAL CAPACITY?

**MR. ARCURI:** I GUESS IF YOU'RE GOING TO TAKE THOSE

ALLEGATIONS AS TRUE, WHICH THEY SIMPLY --

**THE COURT:** I HAVE TO.  I HAVE TO.

11:26  1        **MR. ARCURI:**  WELL, I DON'T THINK YOU DO BECAUSE ALL

2    THAT IS IS AN ELEMENT.  AND I'M NOT TRYING TO BE DISRESPECTFUL.

3    IT'S JUST AN -- THEY ARE JUST RECITING AN ELEMENT OF AN

4    OFFICIAL CAPACITY CLAIM AND PUTTING AMACKER'S NAME IN IT, THAT

5    HE --

6        **THE COURT:**  WELL, WHAT THEY SAID WAS GUSMAN DELEGATED

7    TO AMACKER, AND THAT AMACKER HAD THE RESPONSIBILITY OF MAKING

8    SURE THAT THE CALCULATIONS WERE MADE.

9        **MR. ARCURI:**  RIGHT.

10        **THE COURT:**  AND THEY WEREN'T MADE, AND THEN THESE

11   PRISONERS WERE TRANSFERRED TO EAST CARROLL.

12        **MR. ARCURI:**  RIGHT.

13        **THE COURT:**  THAT'S WHAT IT SAYS.

14        **MR. ARCURI:**  BUT IT SAYS THAT HE DELEGATED

15   POLICY-MAKING AUTHORITY, AND THEN IT SAYS AMACKER FOLLOWED THE

16   POLICY.  AMACKER CALCULATED THE TIME.  AMACKER PUT TOGETHER THE

17   LIST, AND AMACKER SENT THE INMATES TO DOC.  IT DOESN'T SAY THAT

18   HE SUPERVISED ANYONE.  THAT'S MY ISSUE.

19             HE HAS NO SUPERVISORY AUTHORITY AT THE SHERIFF'S

20   OFFICE.  IT DOESN'T SAY HE DOES.  IT SAYS GUSMAN DELEGATED

21   POLICY-MAKING AUTHORITY, AND THEN AMACKER SIMPLY CARRIED OUT A

22   POLICY THAT THEY SAY GUSMAN MADE OR MAYBE MAYNARD MADE.

23        **THE COURT:**  AMACKER IS RESPONSIBLE FOR RECORDING THE

24   RELEASE OF PRISONERS LEAVING OPSO'S PHYSICAL CUSTODY.

25        **MR. ARCURI:**  AND THAT'S --

11:27  1          THE COURT:  HE BOTH PERSONALLY IMPLEMENTED POLICY AND
2    ACTED UNDER THE DIRECTION AND THE SUPERVISION OF GUSMAN AND
3    MAYNARD.  HE WAS PERSONALLY AWARE OF THE UNLAWFUL DETENTION.
4    THAT'S WHAT IT SAYS.
5          MR. ARCURI:  RIGHT.  SO HE'S NOT A SUPERVISOR.  IT
6    SAYS HE ACTED UNDER THE SUPERVISION.  HE PERSONALLY IMPLEMENTED
7    POLICY.  THAT'S WHAT EVERY DEPUTY DOES.  THAT'S WHAT EVERY
8    LINE-STAFF DEPUTY DOES.  THEY IMPLEMENT THE POLICY.  IT DOESN'T
9    SAY HE WROTE POLICY, MADE POLICY.  I MEAN THEY MIGHT HAVE A
10   VAGUE RECITATION OF THAT, BUT IT DOESN'T SAY WHAT HE MADE.  HE
11   TOOK GUSMAN'S POLICIES, OR MAYNARD'S POLICIES, AND IMPLEMENTED
12   THEM.  AND I CONCEDE ALL THAT.  HE DID CALCULATE THE TIME,
13   CREDIT FOR TIME SERVED PAPERWORK.  HE WAS RESPONSIBLE FOR
14   SENDING THE PAPERWORK.  WE CONCEDE THAT.  BUT WE DON'T CONCEDE
15   THAT HE WAS A SUPERVISOR IN ANY SENSE, OR THAT HE HAD ANY
16   AUTHORITY OVER ANYONE.
17         THE COURT:  DEFENDANTS' MAYNARD AND GUSMAN DELEGATED
18   TO DEFENDANT AMACKER FINAL POLICY-MAKING AUTHORITY FOR THE
19   PURPOSES OF ESTABLISHING AND IMPLEMENTING PRACTICES AND
20   PROCEDURES PERTAINING TO PROCESSING.
21         MR. ARCURI:  AND THAT IS SIMPLY A FORMULAIC
22   RECITATION OF THE ELEMENT OF GETTING SUPERVISORY RELIABILITY.
23   IT DOESN'T SAY WHAT POLICY IT WAS.  IT DOESN'T SAY WHAT HE --
24   IT LITERALLY SAYS THEY DELEGATED POLICY-MAKING AUTHORITY TO
25   HIM, AND THEN IT SAYS HE CARRIED OUT THE POLICY.  HE FILLED OUT

11:29   1    THE PAPERWORK.  HE GOT THE LIST READY FOR DOC.  HE TRANSMITTED

2    THE TIME SLIPS TO DOC.  I CONCEDE THAT HE DID THAT, NOT THAT HE

3    WAS A SUPERVISOR; THAT HE WROTE ANY POLICY.  AND I THINK THAT

4    IF YOU'RE GOING TO SAY THE SHERIFF DELEGATED ALL POLICY-MAKING

5    AUTHORITY, AND THE COMPLIANCE DIRECTOR DELEGATED ALL

6    POLICY-MAKING AUTHORITY TO A DEPUTY, YOU HAVE TO SAY SOMETHING

7    THEN THEY DELEGATED IT TO HIM.  THAT'S MY PURPOSE FOR INCLUDING

8    THAT, YOUR HONOR.

9              **THE COURT:**  OKAY.  ALL RIGHT.  THANK YOU, COUNSEL.

10              LET ME HEAR FROM EAST CARROLL.

11         **MR. ARCURI:**  THANK YOU.

12         **MR. RICHARDSON:**  GOOD MORNING, YOUR HONOR.  TIM

13    RICHARDSON AND SHANE BRYANT ON BEHALF OF EAST CARROLL PARISH

14    DEFENDANTS.

15              JUDGE, OUR ARGUMENTS OBVIOUSLY ARE SIMILAR.  THE

16    OBVIOUS DIFFERENCE HERE IS THAT EAST CARROLL IS NOT THE PARISH

17    WHERE THESE INDIVIDUALS WERE SENTENCED.  IT'S NOT THE PARISH

18    WHERE THE PLEADINGS AND THE PROCEEDINGS OCCURRED.  IT ISN'T THE

19    PARISH WHERE THE SENTENCING OCCURRED.  AS WE ALL KNOW, THERE

20    WAS A SENTENCING, AND THEN THESE INMATES WERE THEN SENT TO EAST

21    CARROLL, BEING HELD THERE FOR THE ORLEANS PARISH SHERIFF.

22              SO KIND OF GOING THROUGH SOME OF THE INITIAL

23    ITEMS.  THERE'S SIX POINTS, I BELIEVE, THAT WERE RAISED IN OUR

24    MOTION.  THE FIRST ONE IS:  IS THERE A CONSTITUTIONAL VIOLATION

25    BY THE EAST CARROLL PARISH DEFENDANTS?  AND I THINK THE ANSWER

1   TO THAT IS NO.  AND THE REASON, JUDGE, IS BECAUSE OF THESE

2   CASES HERE, WHICH WE CITED IN OUR BRIEF ON PAGE 4.  IT SAYS,

3   "THE AUTHORITY AND RESPONSIBILITY FOR CALCULATING THE RELEASE

4   DATES FOR INMATES SENTENCED TO DOC CUSTODY RESTS WITH THE DOC,

5   REGARDLESS OF WHERE THE INMATES ARE HOUSED."  AND THAT'S

6   LOUISIANA REVISED STATUTE 15:571.3.  IT FURTHER SAYS THAT, "FOR

7   INMATES IN THE CUSTODY OF DOC, THE SECRETARY OF THE DOC SHALL

8   ESTABLISH REGULATIONS FOR AWARDING AND RECORDING OF GOOD TIME

9   AND SHALL DETERMINE WHEN GOOD TIME HAS BEEN EARNED TOWARD

10   DIMINUTION OF SENTENCE."  THAT'S *STATE V. ARMSTRONG*, 47 SO.3D

11   1075, 1077.

12           **THE COURT:**  I UNDERSTAND THAT, BUT I DON'T UNDERSTAND

13   HOW THAT GETS YOU NO CONSTITUTIONAL VIOLATION.

14           **MR. RICHARDSON:**  WELL, JUDGE --

15           **THE COURT:**  I MEAN THESE PEOPLE WERE DETAINED PAST

16   THEIR RELEASE DATE, END OF STORY.  LIBERTY INTEREST, END OF

17   STORY.  FOURTEENTH AMENDMENT, CONSTITUTIONAL VIOLATION.  I

18   DON'T KNOW HOW IN THE WORLD YOU ARGUE THAT'S NOT A

19   CONSTITUTIONAL VIOLATION.  IT MAY NOT HAVE BEEN YOURS, BUT --

20           **MR. RICHARDSON:**  OH, NO.

21           **THE COURT:**  -- IT IS A CONSTITUTIONAL VIOLATION.

22   THEY'RE THE ONES WITH THE CONSTITUTIONAL RIGHTS.

23           **MR. RICHARDSON:**  YEAH, I --

24           **THE COURT:**  THEY WERE VIOLATED BY SOMEBODY.  I DON'T

25   KNOW WHO.  I DON'T KNOW IF THERE'S LIABILITY FOR IT, BUT THEY

1  WERE VIOLATED.

2        **MR. RICHARDSON:**  YEAH.  I'M NOT SAYING --

3        **THE COURT:**  CAN WE AGREE WITH --

4        **MR. RICHARDSON:**  YEAH.

5        **THE COURT:**  CAN WE AGREE ON THAT?

6        **MR. RICHARDSON:**  YEAH.  I'M NOT GOING TO SAY PEOPLE

7  CAN BE HELD PAST THEIR TIMES THEY NEED TO BE OUT.

8        **THE COURT:**  OKAY.

9        **MR. RICHARDSON:**  I'M NOT ARGUING THAT AT ALL.

10        **THE COURT:**  WELL, IT'S THEIR CONSTITUTIONAL RIGHT.

11        **MR. RICHARDSON:**  SURE.

12        **THE COURT:**  AND IT WAS VIOLATED.

13        **MR. RICHARDSON:**  YEAH.  I'M NOT SAYING THAT THEY

14  DIDN'T NECESSARILY HAVE A CONSTITUTIONAL RIGHT.  I'M JUST

15  SAYING FOR THE EAST CARROLL, FOR MY CLIENT, RIGHT.

16              SO THERE'S NO CASE THAT I FOUND -- OR ANY

17  STATUTE -- THAT SAYS WHEN YOU ARE IN AN INSTITUTION HOLDING FOR

18  SOMEONE ELSE, THAT THAT INSTITUTION IS SUPPOSED TO DETERMINE --

19  MAKE DETERMINATIONS, LET PEOPLE OUT.  THERE'S NO CASE ON THAT.

20  AND I THINK THE REASON FOR THAT IS BECAUSE THAT'S NOT THE DUTY

21  OF THE CONFINING -- OR HOLDING INSTITUTION.  I THINK OTHERWISE

22  WOULD BE A PRETTY SCARY PROPOSITION IN LOUISIANA.  WE WOULD

23  HAVE THE DOC, WHO IS ENTRUSTED -- OR UNDER THE STATUTE WITH

24  DETERMINING THE TIME, BUT THEN YOU WOULD HAVE INDIVIDUAL

25  PRISONS MAKING DETERMINATIONS AS TO WHEN TO HAVE PEOPLE

1 RELEASED.

2            AND IN LOUISIANA, AS YOU WELL KNOW, JUDGE,

3 THERE'S A MYRIAD OF PRIVATE JAILS.  SO WE WOULD HAVE PRIVATE

4 JAILS ALSO TRYING TO MAKE DETERMINATIONS ON GOOD TIME,

5 DETERMINE WHAT SENTENCES ARE, WHEN THEY'RE NOT EVEN IN THE

6 PARISH WHERE THIS OCCURRED.  SO WHAT I'M GETTING AT THERE,

7 JUDGE, IS IN TERMS OF THE EAST CARROLL PARISH, THERE'S NO

8 CONSTITUTIONAL VIOLATION AS TO --

9            **THE COURT:**  WELL, WAS EAST CARROLL PARISH A JAILER?

10            **MR. RICHARDSON:**  I THINK EAST CARROLL PARISH WAS NOT

11 THE JAILER, AS DEFINED AS A LEGAL TERM, A JAILER.  I THINK THE

12 JAILER WOULD HAVE BEEN THE SHERIFF OF ORLEANS PARISH.  I THINK

13 WE WERE A HOLDING INSTITUTION.  THEY HAD BEEN TRANSFERRED.

14 THEY WERE NOT THE INSTITUTION UNDER THE LAW THAT HOLDS THE

15 INDIVIDUAL AS THE, QUOTE, "JAILER."  THEY WERE OBVIOUSLY IN THE

16 CUSTODY.

17            **THE COURT:**  I MEAN, SEE, THIS IS THE PROBLEM:  ONE,

18 WE SAY THAT, WELL, DOC HAD LEGAL CUSTODY.  BUT, THEN, WHO HAD

19 PHYSICAL CUSTODY?  YOU SAY, NOT US, WE WEREN'T THE JAILER,

20 ORLEANS PARISH WAS THE JAILER.  ORLEANS PARISH SAYS, NO, WELL,

21 WE DIDN'T HAVE CUSTODY, THE DOC HAD CUSTODY.  YOU HAVE LEGAL

22 CUSTODY.  YOU HAVE PHYSICAL CUSTODY.  THEN YOU HAVE WHO'S THE

23 JAILER, WHO'S THE NOT JAILER.  BOTTOM LINE IS, SOMEBODY HAS A

24 DUTY TO EFFECT A TIMELY RELEASE.  AND ALL THREE OF Y'ALL OVER

25 THERE ARE POINTING THE FINGER AT EACH OTHER.

1      **MR. RICHARDSON:**  I THINK, JUDGE, THE PROBLEM, AS I

2   SEE IT, IS I DON'T SEE ANY CASE THAT INDICATES THAT A HOLDING

3   JAIL, SOMEONE THAT'S BEEN TRANSFERRED BECAUSE OF OVERCROWDING

4   OR WHATEVER, THEN HAS A RESPONSIBILITY TO TAKE OVER THE DOC'S

5   RESPONSIBILITY, OR ANYBODY ELSE'S, TO START CALCULATING TIME.

6   I THINK THAT'S A PROBLEM.

7             AND THAT GOES INTO MY SECOND ARGUMENT AS TO

8   QUALIFIED IMMUNITY, YOUR HONOR.  CERTAINLY EVEN IF -- LET ME GO

9   WITH THAT.  ASSUMING THERE WAS SOME KIND OF CONSTITUTIONAL

10  VIOLATION AS TO THE EAST CARROLL PARISH SHERIFF, THE QUESTION

11  BECOMES:  WAS THAT A CLEARLY ESTABLISHED RIGHT?  AND THE WAY

12  THAT WE LOOK TO THOSE ARE, WERE THERE CASES ON THAT?  AND I'VE

13  LOOKED -- UNLESS I'VE MISSED SOME -- I DIDN'T SEE ANY CASES

14  THAT HAS A HOLDING JAIL OR A TRANSFER JAIL THAT HAD THE

15  RESPONSIBILITY TO UNILATERALLY CALCULATE AND MAKE THEIR OWN

16  DETERMINATION AS TO A RELEASE DATE.

17            SO TO THE EXTENT THAT THERE WAS A CONSTITUTIONAL

18  VIOLATION AS TO THIS SHERIFF, THEN THE NEXT QUESTION BECOMES:

19  IS THERE QUALIFIED IMMUNITY FOR THOSE INDIVIDUALS?  AND I THINK

20  THE ANSWER TO THAT WOULD BE, YES, BECAUSE THERE IS NO CASE.

21  THIS WOULD BE THE FIRST CASE THAT I FOUND THAT WOULD ESTABLISH

22  THAT RIGHT OR REQUIRE A SHERIFF TO DO THAT.

23            GOING FURTHER, YOUR HONOR, IN TERMS -- AND THIS

24  KIND OF MIRRORS WHAT GUSMAN SAID IN TERMS OF THE PERSONAL

25  INVOLVEMENT AS TO THE EAST CARROLL PARISH SHERIFF, JUST

1   GOING -- LET ME BACK UP A SECOND, JUDGE.

2               I WENT THROUGH NUMBER ONE, THE CONSTITUTIONAL

3   VIOLATION.  THAT WAS MY FIRST ARGUMENT.  NUMBER TWO WAS

4   QUALIFIED IMMUNITY.

5               I'M NOW MOVING INTO THE THIRD ARGUMENT, WHICH IS

6   THE INDIVIDUAL CLAIMS AGAINST THE EAST CARROLL PARISH SHERIFF.

7   AND OUR ARGUMENT THERE IS THERE WAS NO PERSONAL INVOLVEMENT AS

8   OF EAST CARROLL PARISH SHERIFF, INDIVIDUALLY.  AND SO,

9   THEREFORE, THAT CLAIM SHOULD BE DISMISSED AGAINST THE EAST

10  CARROLL PARISH SHERIFF IN HIS INDIVIDUAL CAPACITY, WHICH BRINGS

11  ME TO THE NEXT ARGUMENT, WHICH IS THE OFFICIAL CAPACITY CLAIMS,

12  WHICH IS, AGAIN, SIMILAR TO THE ARGUMENT FOR SHERIFF GUSMAN

13  THAT THE INDIVIDUALS, TO THE EXTENT THAT THEY'RE SUED IN THEIR

14  OFFICIAL CAPACITIES, IS BASICALLY A MONELL CLAIM.  THERE HAS TO

15  BE A POLICY OF DELIBERATE INDIFFERENCE, CLEARLY CONTRARY TO

16  SOMEONE'S RIGHTS, AND HAS TO BE UNDERSTOOD AND DELIBERATELY

17  INDIFFERENT TO THE RIGHTS OF A PLAINTIFF.

18              AND IN THIS CASE, YOUR HONOR, THERE IS NO

19  SPECIFIC ALLEGATION THAT THE EAST CARROLL PARISH ADOPTED A

20  POLICY SPECIFICALLY INDICATING THAT THEY WOULD HOLD PEOPLE ON

21  PURPOSE.  AND, AGAIN, I THINK THAT'S A PROBLEM WITH THE MONELL

22  CLAIM, THE OFFICIAL CAPACITY CLAIM.

23              THE LAST ARGUMENT, YOUR HONOR, IS THE STATE LAW

24  CLAIMS FOR FALSE IMPRISONMENT, AND THAT KIND OF GOES BACK TO MY

25  ORIGINAL CLAIM, WHETHER OR NOT THE EAST CARROLL PARISH CAN BE

1   RESPONSIBLE FOR FALSE IMPRISONMENT, I THINK, FAILS BECAUSE

2   UNDER THE STATE LAW, IT'S NOT EAST CARROLL PARISH'S RIGHT,

3   DUTY, OR OBLIGATION, OR EVEN ABILITY, TO MAKE THEIR OWN

4   DETERMINATION AS TO WHEN SOMEBODY SHOULD BE RELEASED.  AND

5   BECAUSE THEY DON'T HAVE THE ABILITY UNDER STATE LAW TO DO THAT,

6   THERE CAN BE NO FALSE ARREST HERE.

7              SO TO THE EXTENT THAT THERE WAS A CONSTITUTIONAL

8   VIOLATION AND THEY COULD HAVE BEEN RELEASED, I JUST DON'T THINK

9   THERE'S ANY LAW, STATUTORY-WISE OR CASE LAW, THAT PUTS THAT

10  OBLIGATION ON THE SHERIFF OF EAST CARROLL TO MAKE THOSE

11  DETERMINATIONS AND DECIDE WHEN THAT INDIVIDUAL SHOULD BE

12  RELEASED.

13             **THE COURT:**  OKAY.

14             **MR. RICHARDSON:**  THANK YOU, YOUR HONOR.

15             **THE COURT:**  ALL RIGHT.  LET ME HEAR FROM THE

16  PLAINTIFFS.

17             **MS. WASHINGTON:**  GOOD MORNING, YOUR HONOR.

18             **THE COURT:**  GOOD MORNING.

19             **MS. WASHINGTON:**  I WILL TRY TO WORK THROUGH IN THE

20  SAME ORDER OF THE DEFENDANTS, BUT JUST BRIEFLY IN INTRODUCTION,

21  ALL OF THE DEFENDANTS NAMED IN THIS ACTION SHARE RESPONSIBILITY

22  FOR THE OVER-DETENTION OF EACH PLAINTIFF.  EACH DEFENDANT

23  CONTRIBUTED TO THE HARM SUFFERED BY EACH PLAINTIFF, AS

24  ARTICULATED IN THE COMPLAINTS, AND THE PLAINTIFFS HAVE PLED

25  SPECIFIC ACTS AND OMISSIONS BY EACH DEFENDANT.

11:17   1          AS WE'VE LAID OUT HERE, EACH DEFENDANT HAD

2    STATUTORY AND CONSTITUTIONAL OBLIGATIONS, AND EACH DEFENDANT

3    FAILED IN HIS OR HER OBLIGATIONS WHICH CAUSED THE HARM TO THE

4    PLAINTIFFS THAT'S LAID OUT IN THE COMPLAINT.

5          I WILL FOCUS PRIMARILY ON THE FOURTEENTH

6    AMENDMENT DUE PROCESS CLAIMS, AS WELL AS THE ASSOCIATED STATE

7    TORT LAW CLAIMS OF FALSE IMPRISONMENT AND INTENTIONAL

8    INFLICTION OF EMOTIONAL DISTRESS WHICH ARE SUPPORTED BY THE

9    SAME FACTS.

10          BEFORE MOVING INTO EACH OF THE DEFENDANTS, I

11   THINK, YOU KNOW, BRIEFLY ALL THE DEFENDANTS BASICALLY MOVED TO

12   DISMISS THE FOURTEENTH AMENDMENT DUE PROCESS VIOLATIONS ON THE

13   BASIS OF QUALIFIED IMMUNITY, OR SOME OTHER VERSION OF FAILURE

14   TO STATE A CLAIM.  I THINK THE COURT IS WELL AWARE, AS YOU'VE

15   BEEN SPEAKING, ABOUT THE ELEMENTS OF QUALIFIED IMMUNITY.  SO I

16   WON'T BELABOR THAT HERE, ONLY TO SAY THAT IT DOES NOT APPEAR

17   THAT ANY DEFENDANT ARGUES THAT THE PLAINTIFFS HAVE NOT

18   SATISFIED THE FIRST PART OF THIS INQUIRY, HAVING PLED THE

19   VIOLATION OF A CONSTITUTIONAL RIGHT; NAMELY, THE RIGHT TO

20   TIMELY RELEASE FROM PRISON OR CONVERSELY, THE RIGHT NOT TO BE

21   DETAINED ABSENT VALID LEGAL AUTHORITY.

22          IN THE COMPLAINT, EACH INDIVIDUAL PLAINTIFF HAS

23   PLED THAT THEY WERE HELD IN CUSTODY FOR MONTHS BEYOND THE DATE

24   WHEN THEY WERE ENTITLED TO RELEASE.  AND AT THIS STAGE OF THE

25   PROCEEDINGS, THOSE FACTS MUST BE TAKEN AS TRUE.

1        AND FURTHER, I DON'T THINK THAT THE DEFENDANTS

2   ARE DISPUTING THAT THIS RIGHT WAS CLEARLY ESTABLISHED IN LATE

3   2016 OR EARLY 2017, WHEN THE ALLEGED VIOLATIONS OCCURRED.

4        WE'VE CITED TO FIFTH CIRCUIT CASE LAW DATING

5   BACK AS FAR AS 1968 IN _WHIRL_, FOR THE PROPOSITION THAT A JAILER

6   HAS A, QUOTE, DUTY TO EFFECT THE TIMELY RELEASE OF PRISONERS IN

7   HIS CUSTODY, AND EVEN MORE RECENTLY IN _PORTER_, THE JAILER'S

8   DUTY TO ENSURE THAT INMATES ARE TIMELY RELEASED FROM PRISON.

9        SO WHAT'S GOING ON HERE, PRETTY MUCH, IS THAT

10  EACH GROUP OF DEFENDANTS OR EACH DEFENDANT IS, IN FACT,

11  POINTING TO ANOTHER DEFENDANT OR GROUP OF DEFENDANTS AS THE

12  PERSON WHO IS RESPONSIBLE FOR THE PLAINTIFFS' ILLEGAL

13  DETENTION.  BUT ON THE FACTS PLED IN THE COMPLAINT, IT'S CLEAR

14  THAT THE PLAINTIFFS WERE DETAINED WITHOUT LEGAL AUTHORITY.

15        AND AT THIS STAGE, IT'S NOT A MATTER FOR THE

16  COURT TO PARSE THAT LIABILITY WHERE THE PLAINTIFFS HAVE PLED A

17  PLAUSIBLE CLAIM FOR DUE PROCESS VIOLATIONS AND STATE TORT LAW

18  CLAIMS, AS TO EACH DEFENDANT, THOSE CLAIMS SHOULD PROCEED.

19        **THE COURT:**  WELL, ARE THERE ANY LAWS?  OKAY.  WE'VE

20  CITED TO THE CODE OF CRIMINAL PROCEDURE, AND THERE'S ALSO A

21  PROVISION IN TITLE 15 THAT WOULD MAKE IT OBJECTIVELY REASONABLE

22  FOR ONE PARTY OR THE OTHER TO RELY ON ONE OF THE OTHER PARTIES

23  TO DO THE CALCULATIONS AND MAKE SURE THAT THIS CONSTITUTIONAL

24  VIOLATION DOESN'T OCCUR.

25        **MS. WASHINGTON:**  I DON'T BELIEVE SO.  AND I THINK

1    MAYBE IN WALKING THROUGH THE DEFENDANTS, WE CAN GO THROUGH WHAT

2    EACH DEFENDANT'S OBLIGATION WAS AND HOW THEY FAILED.

3              I THINK, ULTIMATELY, EACH OF THE DEFENDANTS

4    NAMED HERE HAD OBLIGATIONS, WHETHER THOSE WERE STATE STATUTORY

5    OBLIGATIONS OR CONSTITUTIONAL OBLIGATIONS, IN WHICH EACH OF

6    THEM FAILED.  I THINK THE GROUP OF FAILURES IS WHAT ULTIMATELY

7    LED TO THE PLAINTIFFS' OVER-DETENTION.

8              **THE COURT:**  ALL RIGHT.  BUT WHAT THEY ARE DOING IS

9    THEY ARE SAYING -- FOR EXAMPLE, THE PARISHES ARE SAYING, WELL,

10   WE WERE OBJECTIVELY REASONABLE BECAUSE IT'S THE DOC'S

11   RESPONSIBILITY TO MAKE THE CALCULATIONS UNDER TITLE 15.

12             THE DOC, ON THE OTHER HAND, IS SAYING WE WERE

13   OBJECTIVELY REASONABLE BECAUSE IT WAS THE PARISHES'

14   RESPONSIBILITY TO REPORT TO US WHATEVER THE TIMEFRAMES WERE

15   UNDER THE CODE OF CRIMINAL PROCEDURE ARTICLE.

16             ARE THOSE TWO LAWS IN CONFLICT WITH EACH OTHER?

17             **MS. WASHINGTON:**  I WOULD ARGUE THAT THEY ARE NOT IN

18   CONFLICT WITH EACH OTHER.  I WOULD ARGUE THAT WHILE THE

19   ULTIMATE CONSTITUTIONAL RIGHT IS FOR A JAILER TO TIMELY RELEASE

20   SOMEONE FROM PRISON, OR ALTERNATELY, THAT YOU HAVE TO HAVE

21   LEGAL AUTHORITY IN ORDER TO HOLD SOMEONE.  OBVIOUSLY, THERE ARE

22   STATUTORY OBLIGATIONS THAT PLAY INTO THOSE CONSTITUTIONAL

23   RESPONSIBILITIES AND DIFFERENT DEFENDANTS FROM DIFFERENT

24   AGENCIES FAILED IN COMPLYING WITH DIFFERENT STATE STATUTES.

25   BUT AT THE END OF THE -- YOU KNOW, AT THE END OF THE DAY, WE'RE

1    TALKING ABOUT THE CONSTITUTIONAL RIGHT.  ALL OF THESE PEOPLE

2    ARE JAILERS.  THEY ALL HAVE RESPONSIBILITIES TO MAKE SURE THAT

3    THEY WERE NOT HOLDING PEOPLE IN CUSTODY WITHOUT VALID LEGAL

4    AUTHORITY.  THAT'S THE CONSTITUTIONAL RIGHT WE ARE TALKING

5    ABOUT.  AND SO, NO, I DON'T THINK THE STATE STATUTES ARE IN

6    CONFLICT.  I THINK THAT THEY APPLIED TO INDIVIDUAL DEFENDANTS

7    IN THIS CASE, ALL OF WHOM FAILED IN THOSE STATUTORY DUTIES.

8         **THE COURT:**  OKAY.  GO AHEAD.

9         **MS. WASHINGTON:**  I THINK -- I CAN WORK FIRST THROUGH

10   THE DEPARTMENT DEFENDANTS PERHAPS.

11        **THE COURT:**  OKAY.

12        **MS. WASHINGTON:**  SO THE DEPARTMENT OF CORRECTIONS

13   DEFENDANTS ARGUE QUALIFIED IMMUNITY AS TO THE FEDERAL DUE

14   PROCESS CLAIM, AND THESE DEFENDANTS RELIED PRIMARILY ON THE

15   ASSERTION THAT THE PLAINTIFFS WEREN'T PHYSICALLY HOUSED IN A

16   DEPARTMENT FACILITY.  BUT THIS DOESN'T ABSOLVE THEM OF THEIR

17   FAILURES, WHICH WERE, ONE, TO PROMULGATE NECESSARY POLICY TO

18   PREVENT THE OVER-DETENTION OF PERSONS SENTENCED TO STATE TIME

19   ANYWHERE IN THE STATE; AND TWO, TO TRAIN AND SUPERVISE STAFF,

20   INCLUDING THE STAFF, YOU KNOW, WITHIN THE DEPARTMENT OF

21   CORRECTIONS TO RESPOND WHEN THERE WERE ALLEGATIONS OF

22   OVER-DETENTION.

23             IN THEIR MOTION TO DISMISS, THE DEPARTMENT

24   DEFENDANTS DID NOT PROVIDE A REAL SPECIFIC ARGUMENT AS TO EACH

25   DEFENDANT AND HIS OR HER ENTITLEMENT TO QUALIFIED IMMUNITY, BUT

11:42  1   I CAN WALK THROUGH ESSENTIALLY WHAT THE PLAINTIFFS HAVE PLED AS

2   TO THE INDIVIDUAL LIABILITY OF THE THREE DEPARTMENT DEFENDANTS.

3            AS TO SECRETARY LEBLANC, THE PLAINTIFFS HAVE

4   PLED THAT LEBLANC WAS RESPONSIBLE FOR THE CONSTITUTIONAL

5   HOUSING OF STATE PRISONERS, A DUTY WHICH INCLUDED THE TIMELY

6   COMPUTATION OF FELONY SENTENCES AND THE TIMELY RELEASE OF

7   PERSONS SENTENCED TO STATE TIME UPON COMPLETION OF THEIR

8   SENTENCES.  THIS IS ALL LAID OUT IN PARAGRAPHS 30 TO 34 OF THE

9   AMENDED COMPLAINT IN CRITTINDON.

10           THE PLAINTIFFS ALSO ALLEGE THAT LEBLANC FAILED

11  TO ENSURE THAT FACILITIES WITH WHICH THE DEPARTMENT CONTRACTS

12  TO HOUSE PRISONERS, LIKE EAST CARROLL, ARE TIMELY AND

13  ACCURATELY PROCESSING PRISONERS INTO THE DEPARTMENT CUSTODY.

14  THIS WOULD INCLUDE THE PROMPT PROVISION OF ANY RECORDS OR

15  DOCUMENTS NECESSARY TO COMPLETE THE TIME CALCULATION AND ISSUE

16  RELEASE DATES.

17           WE ALSO ALLEGE THAT LEBLANC FAILED TO TRAIN THE

18  DEPARTMENT STAFF TO TAKE PROMPT, CORRECTIVE ACTION WHEN THERE

19  WERE ALLEGATIONS OF OVER-DETENTION.  WE CAN GET TO THAT A

20  LITTLE BIT LATER, BUT THE PLAINTIFFS HAVE PLED THAT THEY

21  CONTACTED THE DEPARTMENT DIRECTLY.  THIS WAS AT PARAGRAPHS 49

22  AND 68.  CRITTINDON AND BURSE WROTE LETTERS TO THE DEPARTMENT.

23  THEY FILED GRIEVANCES TO THE DEPARTMENT.  WE ALLEGE THAT THE

24  FAMILY CONTACTED THE DEPARTMENT.

25           AND THEN, FURTHER, THAT IN DECEMBER OF 2016,

1   ATTORNEYS WITH THE MACARTHUR JUSTICE CENTER CONTACTED SECRETARY
2   LEBLANC.  THIS IS AT PARAGRAPHS 51 AND 72.  SO THE IDEA OF
3   WHETHER OR NOT THE DEPARTMENT DEFENDANTS WERE ON NOTICE AS TO
4   THIS PRACTICE, THIS POLICY, AND THE KNOWN UNCONSTITUTIONAL
5   RESULTS OF IT, WE THINK WE HAVE ADEQUATELY PLED IN THE
6   COMPLAINT.
7                    THIS APPLIES AS WELL TO THE DEFENDANTS STAGG AND
8   GRIFFIN.  WE HAVE SIMILARLY PLED SUPERVISORY LIABILITY, THAT
9   THEY FAILED TO ESTABLISH NECESSARY POLICIES AND FAILED TO TRAIN
10  AND SUPERVISE THE STAFF, SIMILAR TO WHAT I JUST LAID OUT WITH
11  SECRETARY LEBLANC, BUT WE ALSO PLED THAT THESE TWO DEFENDANTS
12  AND THEIR STAFFS WERE SPECIFICALLY RESPONSIBLE FOR THE FAILURES
13  TO TIMELY COMPUTE FELONY SENTENCES THAT ARISE FROM STATE COURT
14  CONVICTIONS, AND FOR THE FAILURE TO COME UP TIMELY WITH RELEASE
15  DATES FOR PERSONS WHO WERE SENTENCED TO STATE TIME AT THE
16  COMPLETION OF THEIR SENTENCE.  THIS IS OUTLINED IN PARAGRAPHS
17  35 TO 36 OF THE COMPLAINT.
18                    AGAIN, WE HAVE PLED THAT THE DEPARTMENT
19  DEFENDANTS RECEIVED NOTICE FROM THE PLAINTIFFS DIRECTLY, AS
20  WELL AS FROM THEIR FAMILIES.
21                    AND I WOULD ALSO ADD IN HERE THAT ANOTHER PART
22  OF THE DELIBERATE INDIFFERENCE IS KNOWN CONSEQUENCES OF
23  ACTIONS.  WE ARE TALKING ABOUT STATE ACTORS HERE WHO HAD DUTIES
24  THAT WERE STATUTORY AND CONSTITUTIONAL AND FAILED IN THEIR
25  DUTIES.

11:45  1    IN ADDITION TO ACTUAL OUTREACH BY THE PLAINTIFFS

2    IN THIS CASE, WE ARE TALKING ABOUT KNOWN AND OBVIOUS

3    CONSEQUENCES, WHEN THESE VARIOUS ACTIONS THAT ARE OUTLINED BY

4    STATE STATUTE ARE NOT BEING TAKEN.

5    WE HAVE ALSO POINTED THE COURT -- IT'S ACTUALLY

6    IN THE OPPOSITION AT 17 TO THE DEPARTMENT'S MOTION TO DISMISS

7    TO AN AUDITOR'S REPORT THAT CAME OUT AFTER THE BRIEFING IN THIS

8    CASE, BUT THAT REPORT DETAILED KNOWN DOC FAILURES, INCLUDING

9    THE NEED TO IMPLEMENT OR STRENGTHEN POLICIES FOR TRACKING

10   OFFENDER LOCATIONS, IN CALCULATING RELEASE DATES.  SO I THINK

11   THEY WERE ON NOTICE, WELL ON NOTICE, THAT THIS WAS A

12   CONSEQUENCE OF THEIR ACTIONS.

13   TURNING BRIEFLY TO THE STATE TORT LAW CLAIMS AS

14   TO THE DEPARTMENT DEFENDANTS, THE DEFENDANTS WANT TO PARSE THE

15   TERM *CUSTODY* OF PLAINTIFFS DURING THEIR OVER-DETENTION.  AND I

16   THINK AS THE COURT HAS BEEN WRESTLING WITH, THIS MAY BE A

17   LITTLE BIT OF A DISPUTED FACT, BUT IT'S NOT ONE THAT'S BEFORE

18   THE COURT ON A RULE 12 MOTION TO DISMISS.

19   THE PLAINTIFFS HAVE PLED THAT THEY HAD BEEN

20   SENTENCED TO THE DEPARTMENT'S CUSTODY.  THIS WAS INFORMATION

21   THAT WAS AVAILABLE FROM THE ORLEANS COURT.  IT WAS INFORMATION

22   THAT WAS IN THE OPSO SYSTEMS AND THE EAST CARROLL SYSTEMS AND

23   SHOULD HAVE BEEN TRANSMITTED TO THE DEPARTMENT.  AND IT WAS THE

24   DEPARTMENT OFFICIALS WHO THEN FAILED TO TIMELY COMPLETE THE

25   TIME CALCULATION AND ENSURE THE LAWFUL RELEASE OF THE

1    PLAINTIFFS.

2              THE COURT:  BUT YOU'VE SUED THEM IN THEIR INDIVIDUAL

3    CAPACITIES --

4              MS. WASHINGTON:  CORRECT.

5              THE COURT:  -- AND I THINK WHAT MR. EVANS ARGUES IS

6    THAT INDIVIDUALLY, WHAT ALLEGATIONS DO YOU HAVE THAT

7    INDIVIDUALLY EITHER MR. LEBLANC, MR. STAGG, OR MR. GRIFFIN

8    FALSELY IMPRISONED YOUR CLIENTS, OR INTENTIONALLY INFLICTED

9    EMOTIONAL DISTRESS?

10             MS. WASHINGTON:  THE ALLEGATION IS THAT THROUGH THEIR

11   POLICY OF NOT PROCESSING TIMELY PAPERWORK FOR PERSONS SENTENCED

12   TO THE DEPARTMENT OF CORRECTIONS, AND NOT CALCULATING RELEASE

13   DATES, THAT THEY WERE RESPONSIBLE FOR THE OVER-DETENTION OF THE

14   PLAINTIFFS IN THIS ACTION.

15             AND AS FAR AS THE INTENTIONAL INFLICTION OF

16   EMOTIONAL DISTRESS IS CONCERNED, OUR ALLEGATIONS IS THAT THEIR

17   FAILURES IN THAT POLICY, OR LACK OF POLICY, WAS EXTREME CONDUCT

18   WHICH LED TO EMOTIONAL DISTRESS ON THE PART OF THE PLAINTIFFS

19   BEING HELD IN PRISON FOR FIVE MONTHS WHEN THEY SHOULD HAVE BEEN

20   OUT, AND THAT IT WAS A KNOWN CONSEQUENCE FOR THEIR ACTIONS.

21             THE COURT:  BUT AREN'T THOSE REALLY -- THOSE ARE

22   OFFICIAL CAPACITY COMPLAINTS, AND YOU SUED THEM IN THEIR

23   INDIVIDUAL CAPACITY.

24             MS. WASHINGTON:  I UNDERSTAND THAT.  I THINK IN THEIR

25   INDIVIDUAL CAPACITY, I'M STILL ALLEGING SUPERVISORY LIABILITY,

1  AND ALSO AS TO STAGG AND GRIFFIN, ACTUAL INVOLVEMENT IN THE
2  PROCESS OF DOING TIME CALCULATIONS AND PROVIDING FOR RELEASE
3  DATES, AND I THINK THAT THEIR FAILURES TO DO THAT ARE WHAT LED
4  TO THE FALSE IMPRISONMENT OF THE PLAINTIFFS IN THIS CASE.
5  THAT'S WHAT WE'VE ALLEGED IN THE COMPLAINT.
6           **THE COURT:**  OKAY.
7           **MS. WASHINGTON:**  BEFORE MOVING ON TO THE SHERIFF'S
8  OFFICE, I DON'T KNOW IF THE COURT WANTED TO DISCUSS THE
9  ELEVENTH AMENDMENT ARGUMENT AT ALL.  IT WAS NOT --
10          **THE COURT:**  I MEAN YOU ONLY SUED THEM IN THEIR
11 OFFICIAL CAPACITIES.
12          **MS. WASHINGTON:**  NO.
13          **THE COURT:**  I'M SORRY.  IN THEIR INDIVIDUAL
14 CAPACITIES.
15          **MS. WASHINGTON:**  CORRECT.
16          **THE COURT:**  YEAH, YOU CAN MENTION IT.  BUT . . .
17          **MS. WASHINGTON:**  I DON'T NEED TO.  I WILL MOVE ON.
18               TURNING TO THE ORLEANS DEFENDANTS, AGAIN, YOU
19 KNOW, THE SUIT IS AGAINST THE OPSO DEFENDANTS IN THEIR
20 INDIVIDUAL AND OFFICIAL CAPACITIES FOR BOTH THE FOURTEENTH
21 AMENDMENT CLAIMS AND THE STATE LAW CLAIMS.  OBVIOUSLY, THE
22 DEFENSE OF QUALIFIED IMMUNITY, WHAT IT MOST APPLIED TO WAS THE
23 FEDERAL CONSTITUTIONAL CLAIMS ALLEGED IN THE INDIVIDUAL
24 CAPACITY.
25               STARTING FIRST WITH SHERIFF GUSMAN, IT'S AT

11:49   1    PARAGRAPHS 11 TO 15 OF THE AMENDED COMPLAINT WHERE WE LAID OUT

2    THE ALLEGATIONS AGAINST HIM.  THE PLAINTIFFS HAVE ALLEGED THAT

3    HE WAS THE FINAL POLICYMAKER AND WAS RESPONSIBLE FOR THE

4    IMPLEMENTATION OF POLICES AND PROCEDURES GOVERNING PRISONER

5    HOUSING AND RELEASE, INCLUDING THEIR TRANSFER TO THE CUSTODY OF

6    THE DEPARTMENT OF CORRECTIONS.

7              SPECIFICALLY IN AUGUST OF 2016, WHEN THE

8    PLAINTIFFS CRITTINDON AND BURSE WERE ENTITLED TO RELEASE, THE

9    SHERIFF HAD FULL AUTHORITY OVER THE ORLEANS JAIL AND THE

10   PRISONER POPULATION.  THE SHERIFF HAS A CONSTITUTIONAL

11   OBLIGATION TO ENSURE THAT HE ONLY INCARCERATES THOSE

12   INDIVIDUALS HE HAS THE LAWFUL AUTHORITY TO DETAIN, AS WELL AS

13   THE STATE STATUTORY OBLIGATIONS TO ENSURE THAT PERSONS

14   SENTENCED TO DOC ARE TIMELY AND PROPERLY TRANSFERRED WITH THE

15   REQUISITE PAPERWORK WHICH IS LAID OUT BY STATE STATUTE, ALL OF

16   WHICH IS NECESSARY TO ULTIMATELY AFFECT THEIR RELEASE.

17             THE PLAINTIFFS' CLAIMS AGAINST GUSMAN FALL

18   GENERALLY INTO TWO CATEGORIES:  ONE BEING THE FAILURE TO

19   IMPLEMENT OR ENFORCE APPROPRIATE POLICIES AND PROCEDURES; AND

20   THE SECOND BEING HIS FAILURE TO TRAIN AND SUPERVISE STAFF.

21             SPECIFICALLY REGARDING THE POLICY ELEMENT, THE

22   PLAINTIFFS HAVE PLED THAT GUSMAN AUTHORIZED AND DIRECTED A

23   PRACTICE WHEREBY OPSO WOULD, QUOTE, RELEASE DETAINEES TO EAST

24   CARROLL PARISH UPON SENTENCING, BUT WITHOUT PROCESSING THEIR

25   PAPERWORK, WITHOUT DOING THE PRE-CLASSIFICATION WORK, TIME

11:51   1   CALCULATION, OR PROVIDE ANY OF THE MATERIALS THAT WOULD BE

2   NEEDED TO LEGALLY TRANSFER THEM INTO THE DEPARTMENT OF

3   CORRECTIONS CUSTODY.

4                FURTHER, THE PLAINTIFFS HAVE ALLEGED THAT

5   SHERIFF GUSMAN FAILED TO TRAIN AND SUPERVISE HIS STAFF TO

6   RESPOND TO ALLEGATIONS OF ILLEGAL DETENTION.  THIS IS AT

7   PARAGRAPHS 14 TO 15 OF THE COMPLAINT.

8                THE PLAINTIFFS HAVE PLED THAT THE PRACTICE THAT

9   WAS PUT IN PLACE WAS IN VIOLATION OF OPSO'S OWN POLICY.  THIS

10  IS AT PARAGRAPH 12; THAT IT WAS IN VIOLATION OF STATE STATUTORY

11  OBLIGATIONS.  THIS IS AT PARAGRAPH 15; AND THAT IT ALSO

12  VIOLATED FEDERAL AND STATE CONSTITUTIONAL OBLIGATIONS.  IT IS

13  THIS PRACTICE WHICH FORMS THE BASIS OF THE PLAINTIFFS' OFFICIAL

14  CAPACITY CLAIM AGAINST OPSO AS WELL.

15               TURNING TO THE NOTICE, DELIBERATE INDIFFERENCE

16  ELEMENT:  AS THE COURT IS AWARE, A DEFENDANT CAN BE ON NOTICE

17  AS TO THE RISK OF HARM FROM HIS ACTIONS BY VIRTUE OF THE SHEER

18  FACT THAT THE CONSEQUENCES ARE OBVIOUS.  WE HAVE ALLEGED THAT

19  SHERIFF GUSMAN AND DEPUTY AMACKER DISREGARDED THE KNOWN AND

20  OBVIOUS CONSEQUENCE OF THIS POLICY THAT THEY HAD PUT IN PLACE.

21  THE OPSO DEFENDANTS KNEW THAT OVER-DETENTION AND THE

22  DEPRIVATION OF PRISONERS' RIGHTS WAS THE OBVIOUS AND LIKELY

23  CONSEQUENCES OF THEIR FAILURES.

24               AND IN ADDITION TO THAT, WE HAVE PLED

25  SPECIFICALLY THAT THE PLAINTIFFS AND THEIR FAMILIES CONTACTED

THE SHERIFF'S OFFICE DIRECTLY, AND THAT LATER, COUNSEL WITH THE

MACARTHUR JUSTICE CENTER CONTACTED SHERIFF GUSMAN REGARDING

THIS PRACTICE AND ITS RESULTING OVER-DETENTION.  THIS IS AT

SEVERAL PARAGRAPHS OF THE COMPLAINT:  49, 68, 51, AND 72.

            I'D ALSO NOTE THAT IN A SPECIFIC CASE OF

PLAINTIFF BURSE, HE WAS ACTUALLY IN ORLEANS FOR TEN FULL DAYS

POST-SENTENCING, AND YET HE WAS THEN RETURNED TO EAST CARROLL

WITHOUT ANY OF THE STEPS THAT NEED TO BE TAKEN

PRE-CLASSIFICATION-WISE TO TRANSFER HIM INTO THE DEPARTMENT OF

CORRECTIONS' CUSTODY.  THIS IS PLED IN THE COMPLAINT AT

PARAGRAPH 59.

            I WANT TO REFERENCE BRIEFLY WHAT COUNSEL FOR THE

SHERIFF'S OFFICE NOTED ABOUT THIS BEING AN ACCIDENT, A

HAPPENSTANCE, THAT THIS ONLY HAPPENED TO A FEW PEOPLE.  I MEAN

IN THIS COMPLAINT ITSELF, WE HAVE FIVE INDIVIDUAL PLAINTIFFS

WHO ARE ALLEGING THE EXACT SAME PRACTICE AND THE EXACT SAME

RESULTS.

            IN ADDITION TO THAT, THERE WERE HUNDREDS,

HONESTLY, OF PEOPLE WHO WERE SIMILARLY IMPACTED BY THIS POLICY.

IT DIDN'T ALWAYS RESULT IN OVER-DETENTION BECAUSE SOMETIMES

PEOPLE STILL HAD TIME TO SERVE ON THEIR SENTENCES.  BUT WHEN

THIS PRACTICE WAS PUT INTO PLACE BY THE SHERIFF'S OFFICE,

PAPERWORK WASN'T GOING FOR ANYBODY, SO THERE WERE HUNDREDS OF

PEOPLE WHO WERE SITTING UP IN EAST CARROLL WITHOUT THEIR TIME

BEING CALCULATED, WITHOUT A RELEASE DATE ISSUED.  SO JUST

1  BECAUSE THERE IS ONLY FIVE PEOPLE OR MORE WHO WERE ACTUALLY

2  HARMED BECAUSE OF THE PRACTICE DOESN'T MEAN THAT THE PRACTICE

3  WASN'T MUCH MORE WIDESPREAD THAN JUST THESE PEOPLE WHO ENDED UP

4  UNFORTUNATELY OVER-DETAINED.

5          AND THEN TURNING BRIEFLY TO DEPUTY AMACKER, WE

6  HAVE PLED THAT HE IS LIABLE BOTH AS A SUPERVISOR AND THROUGH

7  HIS DIRECT AND PERSONAL FAILURES.  THERE WAS SOME DISPUTE ABOUT

8  HIS SUPERVISORY ROLE.  I WOULD NOTE THAT HE IS LISTED AS THE

9  DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS CLASSIFICATION

10  MANAGER FOR THE ORLEANS PARISH SHERIFF'S OFFICE.  HE HAD AN

11  ENTIRE STAFF THAT HE WORKED WITH IN -- THEORETICALLY IN PUTTING

12  TOGETHER THESE [SIC] PAPERWORK AND TRANSFERRING PEOPLE INTO DOC

13  CUSTODY.  THIS IS PLED AT PARAGRAPHS 20 TO 21 OF THE COMPLAINT.

14          THE PLAINTIFFS HAVE ALLEGED THAT DEPUTY AMACKER

15  WAS RESPONSIBLE FOR DOCUMENTATION, PROCESSING, AND

16  PRE-CLASSIFICATION OF DOC SENTENCED PRISONERS, AS WELL AS FOR

17  COMPILING AND REVIEWING TRANSFER LISTS FOR PEOPLE TO GO INTO

18  DOC CUSTODY.

19          THE PLAINTIFFS HAVE FURTHER ALLEGED THAT HE WAS

20  PERSONALLY AWARE THAT PRISONERS WERE BEING, QUOTE, "RELEASED,"

21  WHICH AS IS PLED IN THE BRIEF, IS JUST A TERM THAT OPSO PUTS IN

22  ITS SYSTEM WHEN THEY MOVE SOMEONE TO EAST CARROLL.  IT DOESN'T

23  HAVE ANY ACTUAL LEGAL IMPACT.  BUT HE WAS PERSONALLY AWARE THAT

24  PRISONERS WERE BEING, QUOTE, RELEASED WITHOUT THE COMPLETION

25  AND PROVISION OF THE NECESSARY PAPERWORK FOR DOC SENTENCED

11:55   1   INDIVIDUALS TO BE PROCESSED AND ULTIMATELY RELEASED.

2                   WE'VE ALLEGED VERY SPECIFICALLY THAT DEPUTY

3   AMACKER DIDN'T COMPLETE AND PROVIDE PLAINTIFFS'

4   PRE-CLASSIFICATION PAPERWORK; THAT WHILE HE ENTERED THEIR,

5   QUOTE, "RELEASE" INTO THE OPSO SYSTEM, HE DID SO WITHOUT HAVING

6   PREPARED THE DOC PACKETS THAT NEEDED TO BE COMPLETED AND

7   PROVIDED.

8                   AND FURTHER, THAT HE, LIKE ALL THE DEFENDANTS IN

9   THIS CASE, KNEW THAT THERE WERE NO OPEN CHARGES OR WARRANTS OR

10   HOLDS WHICH CONTINUED TO JUSTIFY THESE PEOPLE BEING IN

11   DETENTION.

12                   BRIEFLY, ON THE STATE TORT CLAIMS AS TO THE OPSO

13   DEFENDANTS, YOU KNOW, LIKE WE HAVE TALKED ABOUT, THE FALSE

14   IMPRISONMENT COMPONENTS ARE FAIRLY STRAIGHTFORWARD.  DETENTION

15   AGAINST ONE'S WILL BY SOMEONE WHO LACKS LEGAL AUTHORITY.  THE

16   OPSO ARGUES THAT THEY CANNOT BE LIABLE BECAUSE THE PRISONERS

17   HAD BEEN PHYSICALLY MOVED TO EAST CARROLL PARISH; BUT, ALTHOUGH

18   THEY WERE PHYSICALLY MOVED TO EAST CARROLL, THE PLAINTIFFS HAVE

19   PLED THAT THE OPSO DEFENDANTS IN NO WAY EFFECTUATED THEIR LEGAL

20   TRANSFER TO THE DEPARTMENT OF CORRECTIONS.  SO IT IS THE

21   PLAINTIFFS' ARGUMENT THAT WHERE THE OPSO DEFENDANTS FAILED IN

22   THEIR OBLIGATIONS TO PREPARE THE NECESSARY DOCUMENTS AND TAKE

23   THE REQUIRED STEPS TO TRANSFER THE PLAINTIFFS INTO AND THEN

24   ULTIMATELY OUT OF DOC CUSTODY, THESE DEFENDANTS CONTINUED

25   PLAINTIFFS' DETENTION AFTER ALL LEGAL AUTHORITY FOR THEIR

11:56   1   CUSTODY HAD ENDED.

2                   AND AS WE DESCRIBED BEFORE, AS TO THE

3   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, SIMILARLY WE PLED

4   WHAT THE OPSO PRACTICE WAS AS TO THE ACTS AND OMISSIONS OF

5   THESE DEFENDANTS, ESSENTIALLY TO TRANSFER SENTENCED PRISONERS

6   WITHOUT TIMELY COMPLETION AND PRODUCTION OF NECESSARY

7   DOCUMENTS.  WE'VE ALLEGED THAT THEY KNEW WHAT THE RESULTS OF

8   THIS WERE, THAT THEY KNEW THAT THE LIKELY CONSEQUENCE OF THIS

9   PRACTICE WAS OVER-DETENTION.  AND WE'VE ALLEGED THAT SUCH

10  UNLAWFUL DEPRIVATION OF LIBERTY RESULTED IN SEVERE EMOTIONAL

11  DISTRESS TO THE PLAINTIFFS IN THIS CASE; THUS CREATING THE

12  ELEMENTS FOR THAT TORT LAW CLAIM.

13                  I WILL MOVE ON TO EAST CARROLL UNLESS THE COURT

14  HAS MORE QUESTIONS REGARDING THE ORLEANS PARISH SHERIFF'S

15  OFFICE?

16                  **THE COURT:**  NO.  THANK YOU.

17                  **MS. WASHINGTON:**  SO, LASTLY, AS TO THE EAST CARROLL

18  DEFENDANTS, THEIR ARGUMENT CENTERS ON WHETHER PLAINTIFFS HAVE

19  PLED THAT THE EAST CARROLL PARISH SHERIFF'S OFFICE BEARS

20  RESPONSIBILITY FOR THE VIOLATIONS STATED IN THE COMPLAINT.

21  THEIR PRINCIPAL ARGUMENT IS THAT THEY, QUOTE, "HAD NO AUTHORITY

22  TO RELEASE THE PLAINTIFFS."

23                  WE WOULD ARGUE THAT THIS IS, IN FACT, A REVERSE

24  OF THE INQUIRY REQUIRED BY THE CLEARLY ESTABLISHED PRECEDENT OF

25  THE FIFTH CIRCUIT, AS FAR BACK AS 1969 IN *WHIRL*, WHICH SAID

11:58   1   THAT, QUOTE, "THERE IS NO PRIVILEGE IN A JAILER TO KEEP A
2   PRISONER IN JAIL BEYOND THE PERIOD OF HIS LAWFUL SENTENCE."
3   THUS, THE RELEVANT INQUIRY IS NOT WHETHER EAST CARROLL HAD,
4   QUOTE, "THE AUTHORITY TO RELEASE PRISONERS," BUT RATHER WHETHER
5   EAST CARROLL HAD ANY AUTHORITY TO HOLD THE PRISONERS AFTER
6   THEIR SENTENCES HAD BEEN SERVED.
7            THE COMPLAINT CLEARLY PLEADS THAT EAST CARROLL
8   PARISH SHERIFF'S OFFICE HAD NO AUTHORITY TO HOLD THE PLAINTIFFS
9   IN CUSTODY BEYOND THE DATES THEY WERE ENTITLED TO RELEASE, AND
10   THAT THEY KNEW THAT THEY WERE DOING SO.  I THINK THAT'S BEEN
11   WELL-ESTABLISHED, IT'S NOT DISPUTED THAT THE PLAINTIFFS WERE,
12   IN FACT, IN THE PHYSICAL CUSTODY OF THE EAST CARROLL PARISH
13   SHERIFF'S OFFICE.
14            SPECIFICALLY, AS TO SHERIFF WILLIAMS, THE
15   PLAINTIFFS HAVE ALLEGED THAT THE EAST CARROLL PARISH DEFENDANTS
16   -- WELL, THE EAST CARROLL PARISH DEFENDANTS HAVE ARGUED THAT
17   THEY'RE ENTITLED TO QUALIFIED IMMUNITY, THAT ARGUMENT IS A
18   LITTLE UNUSUAL.  THEY ARGUE THAT BECAUSE THEY WERE ONLY THE,
19   QUOTE, "HOUSING AUTHORITY" AND BECAUSE THEY, QUOTE, "ACTED IN
20   GOOD FAITH," THAT THEY ARE ENTITLED TO QUALIFIED IMMUNITY.
21   THIS FAILS TO MEET THE STANDARD FOR QUALIFIED IMMUNITY WHERE
22   THE PLAINTIFFS HERE HAVE PLED A VIOLATION OF A CLEARLY
23   ESTABLISHED RIGHT.  AS THE COURT IN *DOUTHIT VERSUS JONES*, THE
24   FIFTH CIRCUIT HAS SAID THE MERE STATEMENT THAT THEY BELIEVED IN
25   GOOD FAITH THAT THEIR ACTIONS WERE LAWFUL WILL NOT SUFFICE TO

1   ESTABLISH THE DEFENSE.

2           THE FACTS THAT HAVE BEEN PLED AS TO SHERIFF

3   WILLIAMS ARE SIMILAR IN SOME RESPECTS TO THOSE PLED AGAINST

4   SHERIFF GUSMAN AND THE OPSO DEFENDANTS.  THE PLAINTIFFS HAVE

5   PLED THAT SHERIFF WILLIAMS FAILED TO IMPLEMENT APPROPRIATE

6   POLICIES AND PRACTICES TO PREVENT HARM AND FAILED TO TRAIN AND

7   SUPERVISE HIS STAFF.  THIS IS LAID OUT IN PARAGRAPHS 22 TO 25

8   OF THE AMENDED COMPLAINT.

9           SPECIFICALLY, SHERIFF WILLIAMS HOUSED THE

10  PLAINTIFFS CRITTINDON AND BURSE AS PRE-TRIAL PRISONERS IN EAST

11  CARROLL, AND THAT HE RECEIVED THEM AND CONTINUED THEIR CUSTODY

12  AFTER SENTENCING.  THE PLAINTIFFS WERE EVEN LISTED IN THE EAST

13  CARROLL PARISH SHERIFF'S OFFICE DATABASE AS DOC AT THAT POINT.

14  THIS IS AT PARAGRAPHS 24, 26, AND 28.  BUT DESPITE KNOWING THEY

15  HAD BEEN SENTENCED AND NOW SHOULD BE IN DOC CUSTODY, SHERIFF

16  WILLIAMS AUTHORIZED A PRACTICE OF ACCEPTING OPSO'S SENTENCED

17  DETAINEES, BUT ACCEPTING THOSE PRISONERS WITHOUT ENSURING THAT

18  REQUISITE PAPERWORK AND DOCUMENTATION NECESSARY FOR CALCULATING

19  AND ISSUING THEIR RELEASE WAS PROVIDED TO THE DEPARTMENT OF

20  CORRECTIONS.  AND, LASTLY, IGNORING THE OBVIOUS CONSEQUENCES OF

21  THAT.  WE FURTHER ALLEGE THAT THE SHERIFF FAILED TO TRAIN AND

22  SUPERVISE HIS STAFF TO RESPOND TO ASSERTIONS OF ILLEGAL

23  DETENTION.

24           AS WE HAVE STATED WITH SOME OF THE OTHER

25  DEFENDANTS, SHERIFF WILLIAMS AND THE OTHER EAST CARROLL

12:00  1   DEFENDANTS WERE ON NOTICE OF THE KNOWN CONSEQUENCES OF THIS

2   PRACTICE THAT THEY HAD PUT IN PLACE, AND WE FURTHER PLED THAT

3   THERE WAS ACTUAL NOTIFICATION TO THE EAST CARROLL PARISH

4   SHERIFF'S OFFICE BY ALL OF THE PLAINTIFFS.

5            AS PREVIOUSLY STATED, THE DATABASE FOR EAST

6   CARROLL ACTUALLY HAD ALL OF THESE PLAINTIFFS LISTED IN THERE AS

7   DEPARTMENT OF CORRECTIONS, AND YET THE SHERIFF'S OFFICE DID NOT

8   ENSURE THAT THE DOC HAD THE REQUISITE PAPERWORK TO PROCESS THE

9   RELEASE OF THESE PRISONERS, OR TO ENSURE THAT THEY HAD RELEASE

10  DATES RECEIVED BACK FROM THE DEPARTMENT OF CORRECTIONS IN THEIR

11  SYSTEM SO THAT, ULTIMATELY, PEOPLE WOULD BE RELEASED AT THE END

12  OF THEIR SENTENCE.

13           AS TO WARDENS HEDGEMON AND KNIGHT, THE CLAIMS

14  ARE SIMILAR.  WE HAVE ALSO CLAIMED SUPERVISORY LIABILITY BY

15  WARDENS HEDGEMON AND KNIGHT.  THIS IS ARTICULATED AT PARAGRAPHS

16  26 AND 28, AS WELL AS DIRECT PERSONAL INVOLVEMENT IN THE

17  OVER-DETENTION OF THE PLAINTIFFS.

18           WE ALLEGE THAT WARDEN HEDGEMON AND WARDEN KNIGHT

19  FAILED TO RESPOND APPROPRIATELY TO PRISONER GRIEVANCES, OR TO

20  REQUEST FROM THE FAMILIES OF THE PRISONERS FOR ASSISTANCE.

21  WE'VE ALLEGED THAT THEY DID NOT INVESTIGATE CLAIM OF

22  OVER-DETENTION, OR TAKE ANY STEPS TO ENSURE THAT THESE

23  PRISONERS WERE RELEASED.  THIS IS SORT OF THROUGHOUT THE

24  COMPLAINT, BUT AT PARAGRAPHS 27 AND 29, ALSO AT 49 TO 51, AND,

25  AGAIN, AT 68 TO 71.

12:02   1          AND, LASTLY, ON THE FALSE IMPRISONMENT CLAIM AS
2    TO THE EAST CARROLL DEFENDANTS, AS THEY STATED, THEY ARGUED
3    THAT THEY CAN'T BE LIABLE FOR FALSE IMPRISONMENT AS THEY WERE
4    NOT THE, QUOTE, "INCARCERATING AUTHORITY."  HONESTLY, THE
5    PLAINTIFFS WERE UNABLE TO FIND ANY LEGAL DEFINITION FOR THIS
6    PHRASE, AND ONE DOES NOT APPEAR TO HAVE BEEN PROVIDED BY THE
7    EAST CARROLL DEFENDANTS.  ULTIMATELY, THERE IS NO LEGAL BASIS
8    FOR DISCLAIMING RESPONSIBILITY FOR THE LAWFULNESS OF DETENTION
9    THAT EAST CARROLL WAS ONLY, QUOTE, "HOUSING THE PLAINTIFFS."
10          WHAT IS UNDISPUTED IS THAT THE PLAINTIFFS WERE
11   PHYSICALLY IN THE CUSTODY OF THE EAST CARROLL PARISH SHERIFF'S
12   OFFICE AT THE RIVER BEND DETENTION CENTER, AND THE PLAINTIFFS
13   HAVE CLEARLY PLED AN UNWONTED DETENTION WITHOUT LEGAL
14   AUTHORITY.  AND THESE ARE THE SUFFICIENT ELEMENTS TO STATE A
15   PLAUSIBLE CLAIM AGAINST THE EAST CARROLL PARISH SHERIFF'S
16   OFFICE DEFENDANTS.  NOT TO BELABOR THE POINT, BUT IT IS THESE
17   SAME ELEMENTS WHICH WE HAVE GONE THROUGH BEFORE WHICH ALSO LAY
18   OUT THE STATE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL
19   DISTRESS ALSO AS TO THE EAST CARROLL DEFENDANTS.
20          **THE COURT:**  OKAY.  THANK YOU.
21          OKAY.  THERE ARE ESSENTIALLY THREE MOTIONS --
22   WELL, THERE ARE THREE MOTIONS LEFT, BUT THERE ARE THREE
23   ARGUMENTS LEFT.  ALL PARTIES MOVE FOR DISMISSAL OF THE OFFICIAL
24   CAPACITY CLAIMS, AND ALL PARTIES MOVE FOR DISMISSAL OF THE
25   INDIVIDUAL CAPACITY CLAIMS, SPECIFICALLY ASSERTING QUALIFIED

12:04   1   IMMUNITY.  THE STATE DEFENDANTS, SPECIFICALLY THE DOC

2   DEFENDANTS LEBLANC, STAGG, AND GRIFFIN, URGE ELEVENTH AMENDMENT

3   IMMUNITY.  THE COURT FINDS THE ELEVENTH AMENDMENT IS NOT

4   APPLICABLE.  THE ONLY CLAIMS MADE AGAINST LEBLANC, STAGG, AND

5   GRIFFIN ARE INDIVIDUAL CAPACITY CLAIMS.  THERE ARE NO OFFICIAL

6   CAPACITY CLAIMS MADE, SO THE ELEVENTH AMENDMENT REALLY IS NOT

7   TRIGGERED IN THIS CASE.  FOR THAT REASON, THE ELEVENTH

8   AMENDMENT IMMUNITY, MOTION TO DISMISS BY DEFENDANTS LEBLANC,

9   STAGG, AND GRIFFIN IS OVERRULED.

10                  WITH RESPECT TO THE OFFICIAL CAPACITY CLAIMS,

11   ALL OF THE DEFENDANTS ARE IN PRETTY MUCH THE SAME POSITION WITH

12   RESPECT TO THEIR MOTIONS TO DISMISS THE OFFICIAL CAPACITY

13   CLAIMS.  OBVIOUSLY, THE OFFICIAL CAPACITY CLAIMS ARE THE

14   EQUIVALENT OF FILING A SUIT AGAINST THE GOVERNMENT AGENCY, ALSO

15   KNOWN AS MONELL LIABILITY.  IN ORDER FOR A MUNICIPALITY OR A

16   GOVERNMENTAL AUTHORITY OR GOVERNMENTAL AGENCY, AS IT WERE IN

17   THIS CASE, TO HAVE OFFICIAL CAPACITY RESPONSIBILITY UNDER

18   SECTION 1983 OF THE CIVIL RIGHTS ACT, THERE MUST BE SOME

19   POLICY, CUSTOM, OR PRACTICE THAT HAS CAUSED THE CONSTITUTIONAL

20   VIOLATION.  A STATEMENT, ORDINANCE, REGULATION, OR DECISION

21   THAT IS PROMULGATED BY THE MUNICIPALITY'S LAWMAKING OFFICERS OR

22   AN OFFICIAL TO WHOM THE LAWMAKERS HAVE DELEGATED POLICYMAKING

23   AUTHORITY.  THOSE ARE THE ALLEGATIONS IN THIS CASE; THAT THE

24   OFFICIALS, SPECIFICALLY LEBLANC, GUSMAN, AND THE EAST CARROLL

25   PARISH SHERIFF WILLIAMS, HAVE DELEGATED SOME OF THOSE

12:06  1  DECISION-MAKING RESPONSIBILITIES AND THOSE IMPLEMENTATION OF

2  POLICIES AND PROMULGATIONS OF POLICIES.  THE COURT FINDS THERE

3  ARE SUFFICIENT ALLEGATIONS AS TO THE POLICYMAKING OF EACH OF

4  THE DEFENDANTS IDENTIFIED FOR EACH OF THE VARIOUS ENTITIES,

5  BOTH DOC, ORLEANS PARISH, AND EAST CARROLL PARISH.

6            THE SECOND ELEMENT IS THAT THERE BE A PERSISTENT

7  OR WIDESPREAD PRACTICE, AND THAT THERE IS CONSTRUCTIVE OR

8  ACTUAL KNOWLEDGE OF THE CUSTOM OR PRACTICE THAT CAN BE

9  ATTRIBUTABLE TO THE MUNICIPALITY OR THE LAW-MAKING POLICY

10  MAKING DEFENDANTS.

11            IN THIS CASE, AS TO EACH DEFENDANT, THE

12  PLAINTIFF HAS SPECIFICALLY PLED THAT EACH OF THE DEFENDANTS

13  WERE PLACED ON NOTICE BY THE PLAINTIFFS THEMSELVES, AND THEN

14  SUBSEQUENTLY BY THE PLAINTIFFS' COUNSEL, TO LET THEM KNOW THAT

15  THEY WERE BEING DETAINED BEYOND THEIR LAWFUL TIME FOR

16  DETENTION.  SO THERE ARE SUFFICIENT FACTS PLED, AS PLED AT

17  LEAST AT THIS STAGE IN THE PLEADINGS, TO DENY THE MOTION TO

18  DISMISS THE OFFICIAL CAPACITY CLAIMS.

19            THERE ARE ALLEGATIONS THAT EACH OF THE ENTITIES,

20  THROUGH THE STATE ACTORS IDENTIFIED, FAILED TO EITHER IMPLEMENT

21  THE POLICIES OR PRACTICES, OR FAILED IN THE EXECUTION OF THOSE

22  PRACTICES, RESULTING IN ILLEGAL CONTINUED DETENTION, OR

23  UNAUTHORIZED CONTINUED DETENTION OF THE PLAINTIFFS.  THE COURT

24  IS PERSUADED OBVIOUSLY BY THE LAW THAT INDICATES THAT A JAILER

25  WHO EITHER NEGLIGENTLY OR WITH DELIBERATE INDIFFERENCE

12:08   1   ESTABLISHES A RECORDKEEPING SYSTEM WHICH RESULTS IN ERRORS THAT
2   PRODUCE JAIL TERMS BEYOND WHAT IS AUTHORIZED BY THE SENTENCING
3   JUDGE AND BEYOND WHAT THE SENTENCE WOULD WARRANT ARE VIOLATIONS
4   OF THE DUE PROCESS CLAUSE, AND THE COURT IS GOING TO DENY THE
5   MOTIONS TO DISMISS THE OFFICIAL CAPACITY CLAIMS FOR THE REASONS
6   STATED.

7                 WITH RESPECT TO THE INDIVIDUAL CAPACITY CLAIMS
8   OF QUALIFIED IMMUNITY IS ASSERTED BY EACH OF THE DEFENDANTS.
9   AT THIS STAGE IN THE PROCEEDINGS, THE COURT IS OBLIGED TO
10  ACCEPT THE ALLEGATIONS OF THE COMPLAINT AS TRUE AND TO CONSIDER
11  THE ALLEGATIONS AS ALLEGED IN THE COMPLAINT IN SCRUTINIZING THE
12  QUALIFIED IMMUNITY ANALYSIS.  THE COURT MUST ACCEPT THE
13  WELL-PLEADED FACTUAL ALLEGATIONS.  THE DEFENDANTS CANNOT
14  PREVAIL ON THEIR QUALIFIED IMMUNITY DEFENSE IF THE PLEADINGS ON
15  THEIR FACE SHOW AN UNREASONABLE VIOLATION OF CLEARLY
16  ESTABLISHED CONSTITUTIONAL RIGHT.  THERE IS A CLEARLY
17  ESTABLISHED CONSTITUTIONAL RIGHT IN THIS CASE.  EACH OF THE
18  PARTIES CONCEDE THAT.  THEN THE QUESTION BECOMES WHETHER OR NOT
19  THE DEFENDANTS' ACTIONS WERE OBJECTIVELY REASONABLE IN LIGHT OF
20  THE CLEARLY ESTABLISHED LAW AT THE TIME.  THE COURT CANNOT MAKE
21  THAT DETERMINATION AND GRANT QUALIFIED IMMUNITY AT THIS STAGE,
22  PARTICULARLY IN LIGHT OF THE POSTURE OF THE DEFENDANTS EACH
23  POINTING THE FINGER AT THE OTHER, SO TO SPEAK, TO DETERMINE
24  THAT ONE PARTY, OR ONE DEFENDANT OR THE OTHER, WAS OBJECTIVELY
25  REASONABLE WOULD REQUIRE THIS COURT TO FIND FACT AS TO WHICH OF

THE OTHER PARTIES BREACHED OBLIGATIONS TO ENSURE THAT THESE
PLAINTIFFS WERE NOT DETAINED BEYOND THE LAWFUL LENGTH OF THEIR
SENTENCE.

       THE CRUX OF THE PLAINTIFFS' ALLEGATIONS ARE THAT
THE DEFENDANTS HAVE EITHER DEFICIENT OR NONEXISTENT POLICIES
FOR PROCESSING AND RELEASING DOC INMATES WHO ARE ULTIMATELY
SENTENCED, AND AT THE TIME OF THEIR SENTENCE, IF CREDIT IS
GIVEN FOR TIME SERVED OR FOR GOOD TIME, OR WHATEVER MECHANISMS
REQUIRE THE CREDIT, THESE PARTICULAR PLAINTIFFS CONTINUE TO BE
DETAINED IN VIOLATION OF THEIR CONSTITUTIONAL RIGHT TO LIBERTY.
THE PLAINTIFF ALLEGES THAT EACH DEFENDANT KNEW THAT ITS
DEFICIENT POLICIES RESULTED IN UNLAWFUL OVER-DETENTION DUE TO
COMPLAINTS BY THE PARTICULAR PLAINTIFFS, COMPLAINTS BY THEIR
FAMILY AND LOVED ONES, LETTERS SENT, AND ULTIMATELY A LETTER
SENT BY PLAINTIFFS' COUNSEL.

       THE DEFENDANTS EACH ARGUED THAT THEIR PARTICULAR
CONDUCT WAS OBJECTIVELY REASONABLE BECAUSE EACH OF THE
INDIVIDUAL DEFENDANTS ARGUE THAT -- OR EACH OF THE CLASSES OF
INDIVIDUAL DEFENDANTS ARGUED THAT THEY DIDN'T HAVE THE CUSTODY
OR THE AUTHORITY TO MAKE THE SPECIFIC RELEASES.  JUST THE
FINGER POINTING ALONE PRECLUDES THIS COURT FROM MAKING A
DETERMINATION THAT WOULD SUBSTANTIATE QUALIFIED IMMUNITY IS
AVAILABLE BECAUSE THE COURT CANNOT CONCLUDE THAT ONE PARTY OR
THE OTHER ACTED IN AN OBJECTIONABLY REASONABLE FASHION WHEN
IT'S CLEAR THAT I WOULD HAVE TO MAKE FINDINGS OF FACT IN ORDER

1    TO MAKE THAT DETERMINATION.  SO AT THIS JUNCTURE, THE COURT

2    SIMPLY CANNOT GRANT THE INDIVIDUAL CAPACITY QUALIFIED IMMUNITY

3    DEFENSE AND WILL DENY THE 12(B)(6) MOTION ON THE INDIVIDUAL

4    CAPACITY CLAIMS WITH RESPECT TO QUALIFIED IMMUNITY.

5                   TAKEN AS TRUE AND ACCEPTING THE ALLEGATIONS AS

6    TRUE, THE PLAINTIFFS' FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

7    TO LIBERTY WERE VIOLATED WHEN THEY WERE NOT RELEASED SUBSEQUENT

8    TO THERE BEING NO LEGAL AUTHORITY TO CONTINUE TO INCARCERATE

9    THEM.  THE COURT EMPHASIZES THAT THE COURT CANNOT -- THAT THE

10   DEFENDANTS CANNOT SUCCEED IN THEIR MOTIONS AT THIS PLEADING

11   STAGE BECAUSE THE CONTENTIONS IN SUPPORT OF THE DEFENDANTS'

12   MOTIONS ARE BASED ON A RENDITION OF THE FACTS THAT CONTRADICT

13   THE FACTUAL ALLEGATIONS IN THE PLAINTIFFS' COMPLAINT, AND THIS

14   COURT IS OBLIGED TO TAKE THE ALLEGATIONS IN THE PLAINTIFFS'

15   COMPLAINT AS TRUE AT THIS JUNCTURE.  SO THE MOTIONS TO DISMISS

16   THE CONSTITUTIONAL CLAIMS ARE DENIED.

17                   THE COURT IS GOING TO LIKEWISE DENY THE MOTIONS

18   TO DISMISS THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND

19   THE FALSE IMPRISONMENT CLAIMS.  IT MAY BE THAT DISCOVERY AND --

20   ON MOTION FOR SUMMARY JUDGMENT, THOSE CLAIMS, PARTICULARLY THE

21   INTENTIONAL INFLICTION CLAIM, WHICH *WHITE VERSUS MONSANTO*

22   PLACES AN EXTREMELY HIGH BURDEN, BUT GIVEN THE ALLEGATIONS IN

23   THE COMPLAINT, THE COURT IS GOING TO DENY THE DISMISSAL OF THE

24   STATE LAW CLAIMS AT THIS STAGE IN THE PROCEEDINGS.

25                   IS THERE ANYTHING FURTHER?

1    **MR. RICHARDSON:**  NO, YOUR HONOR.

2    **MS. WASHINGTON:**  NO.

3    **THE COURT:**  OKAY.  WE ARE ADJOURNED.

4         THANK YOU ALL FOR COMING IN THIS MORNING.

5    **MR. EVANS:**  THANK YOU, YOUR HONOR.

6    **MS. WASHINGTON:**  THANK YOU, YOUR HONOR.

7              **(PROCEEDINGS ADJOURNED.)**

8                   * * *

9              <u>**CERTIFICATE**</u>

10   I, SHANNON THOMPSON, CCR, OFFICIAL COURT REPORTER FOR THE

11   UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF LOUISIANA,

12   CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO

13   THE BEST OF MY ABILITY AND UNDERSTANDING, FROM THE RECORD OF

14   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

15

16                   *Shannon Thompson*

17              SHANNON THOMPSON, CCR,

18              OFFICIAL COURT REPORTER

19

20

21

22

23

24

25