UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE CRITTINDON et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARLIN GUSMAN et al.,<br><br>    Defendants. | Case No. 3:17-cv-00512-SDD-EWD |

c/w

| | |
|---|---|
| EDDIE COPELIN et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARLIN GUSMAN et al.,<br><br>    Defendants. | Case No. 3:17-cv-00602-BAJ-EWD |

**DEFENDANT SHERIFF MARLIN N. GUSMAN'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION TO OPSO DEFENDANTS**

Now comes Sheriff Marlin N. Gusman, who objects and responds as follows to the Plaintiffs' First Set of Interrogatories, Requests for Production of Documents, and Requests for Admission to OPSO Defendants as follows:

### INTERROGATORIES AND REQUESTS

**Request for Admission No. 1**: Admit that on August 2, 2016, Plaintiff Jessie Crittindon was sentenced by the Orleans Parish Criminal District Court in case no. 521975 to serve two years DOC (state) time, and in case no. 521590 to serve six months of DOC time (as

well as 12 years DOC suspended, 5 years active probation) concurrent with the sentence in case no. 521975.

**Response to Request for Admission No. 1:** Denied. Plaintiff received 6 months of parish prison time, not 6 months of DOC time. Admitted as to the rest of the sentences set forth above.

**Request for Admission No. 2**: Admit that Plaintiff Jessie Crittindon's lawful release date was August 2, 2016.

**Response to Request for Admission No. 2:** Denied. Defendant objects to the definition stated above of "lawful release date" to any extent that it considers "good time" as part of said calculation, as diminution of sentence is given at the discretion of the secretary of the Department of Corrections and is not presumed or earned at the moment of sentencing, it is contingent on actual good behavior and/or participation in programs, and it is prohibited for second offenders of crimes of violence such as the offense for which the Plaintiff was convicted. Defendant has no information sufficient upon which to make any representation as to whether the Plaintiff was entitled to "good time," either based upon the conditions imposed by law or the discretion of the DOC or each facility which held him prior to sentencing.

**Request for Admission No. 3**: Admit that Plaintiff Jessie Crittindon was not released from custody until January 13, 2017.

**Response to Request for Admission No. 3:** Admitted only as to his release from Department of Corrections custody.

**Request for Admission No. 4:** Admit that on August 8, 2016, the Orleans Parish Criminal District Court sentenced Plaintiff Leon Burse to serve five (5) years DOC (state) time, four (4) years suspended, in case no. 526057.

**Response to Request for Admission No. 4:** Admitted.

**Request for Admission No. 5**: Admit that Plaintiff Leon Burse's lawful release date was August 8, 2016.

**Response to Request for Admission No. 5:** Denied. Defendant objects to the definition stated above of "lawful release date" to any extent that it considers "good time" as part of said calculation, as diminution of sentence is given at the discretion of the secretary of the Department of Corrections and is not presumed or earned at the moment of sentencing, it is contingent on actual good behavior and/or participation in programs. Defendant has no information sufficient upon which to make any representation as to whether the Plaintiff was entitled to "good time," either based upon the conditions imposed by law or the discretion of the DOC or each facility which held him prior to sentencing.

**Request for Admission No. 6**: Admit that Plaintiff Leon Burse was not released from custody until January 11, 2017.

**Response to Request for Admission No. 6:** Admitted only as to his release from Department of Corrections custody.

**Request for Admission No. 7:** Admit that on October 14, 2016, the Orleans Parish Criminal District Court sentenced Plaintiff Eddie Copelin to serve two years DOC (state) time with one year suspended (one year active probation) in case no. 527992.

**Response to Request for Admission No. 7:** Admitted.

**Request for Admission No. 8**:   Admit that Plaintiff Eddie Copelin's lawful release date was October 14, 2016.

**Response to Request for Admission No. 8:**   Denied.  Defendant objects to the definition stated above of "lawful release date" to any extent that it considers "good time" as part of said calculation, as diminution of sentence is given at the discretion of the secretary of the Department of Corrections and is not presumed or earned at the moment of sentencing and is not presumed or earned at the moment of sentencing, it is contingent on actual good behavior and/or participation in programs.  Defendant has no information sufficient upon which to make any representation as to whether the Plaintiff was entitled to "good time," either based upon the conditions imposed by law or the discretion of the DOC or each facility which held him prior to sentencing.

**Request for Admission No. 9**:   Admit that Plaintiff Eddie Copelin was not released from custody until January 13, 2017.

**Response to Request for Admission No. 9:**   Admitted only as to his release from Department of Corrections custody.

**Request for Admission No. 10:**   Admit that on September 1, 2016, the Orleans Parish Criminal District Court sentenced Plaintiff Phillip Dominick to serve five years DOC (state) time in case no. 499077.

**Response to Request for Admission No. 10:**   Admitted.

**Request for Admission No. 11**:   Admit that Plaintiff Phillip Dominick's lawful release date was September 1, 2016.

**Response to Request for Admission No. 11:**   Denied.  Defendant admits only that on the date of his plea under Criminal District Court Case No. 499077, that defendant

4

had completed the number of years required by that specific sentence. Denied as to any suggestion that "release" refers to a physical release from custody, or to any extent that this request seeks an admission as to a release on Case No. 509443 or 521680, as any credit for time served under Case No. 499077 could not be legally given as credit on either Case No. 509443 or 521680, as a criminal defendant is only entitled to time previously served if the time he served before the imposition of this sentence has not been credited against any other sentence.

Defendant objects to the definition stated above of "lawful release date" to any extent that it considers "good time" as part of said calculation, as diminution of sentence is given at the discretion of the secretary of the Department of Corrections and is not presumed or earned at the moment of sentencing and is not presumed or earned at the moment of sentencing, it is contingent on actual good behavior and/or participation in programs. Defendant has no information sufficient upon which to make any representation as to whether the Plaintiff was entitled to "good time," either based upon the conditions imposed by law or the discretion of the DOC or each facility which held him prior to sentencing.

**Request for Admission No. 12**: Admit that Plaintiff Phillip Dominick was not released from custody until December 7, 2016.

**Response to Request for Admission No. 12:** Admitted only as to his release from Department of Corrections Custody.

**Request for Admission No. 13:** Admit that on July 12, 2016, the Orleans Parish Criminal District Court sentenced Plaintiff Donald Guidry to serve five years DOC (state) time, three years suspended, in case no. 523577.

**Response to Request for Admission No. 13:** Admitted.

5

**Request for Admission No. 14**: Admit that Plaintiff Donald Guidry's lawful release date was September 4, 2016.

**Response to Request for Admission No. 14:** Denied. Defendant objects to the definition stated above of "lawful release date" to any extent that it considers "good time" as part of said calculation, as diminution of sentence is given at the discretion of the secretary of the Department of Corrections and is not presumed or earned at the moment of sentencing and is not presumed or earned at the moment of sentencing, it is contingent on actual good behavior and/or participation in programs. Defendant has no information sufficient upon which to make any representation as to whether the Plaintiff was entitled to "good time," either based upon the conditions imposed by law or the discretion of the DOC or each facility which held him prior to sentencing.

**Request for Admission No. 15**: Admit that Plaintiff Donald Guidry was not released from custody until January 24, 2017.

**Response to Request for Admission No. 15:** Admitted only as to his release from Department of Corrections custody.

**Interrogatory No. 1**: If you deny all or any part of Requests for Admission Nos. 1 through 15, state all facts which you rely upon to support your denial, identify all persons with discoverable knowledge of these facts, and identify all documents which disclose, contain, support, or concern these facts.

**Response to Interrogatory No. 1:**

Defendant has provided full and complete responses which contain all available information available to him.

**Interrogatory No. 2:** Identify all communications sent or received by any employee or agent of OPSO, including but not limited to Defendant Marlon Gusman, Defendant Corey Amacker, and former Independent Compliance Director Gary Maynard, concerning the conviction, sentence, or lawful release date of any of the Plaintiffs, and describe the contents of each such communication.

**Response to Interrogatory No. 2:** Defendant was not personally involved in any communications involving this incident. Upon information and belief, and review of files, one email chain exists between defendant Corey Amacker, Blake Arcuri, Rebecca Cooper and Gary Maynard in which legal counsel discussed a Habeas Corpus petition which was filed related to this matter. To any extent the specific contents of these email communications are sought, Defendant objects to any extent that Plaintiff seeks the contents of this email on the grounds of attorney-client privilege.

**Interrogatory No. 3**: Identify any policies, procedures, manuals, or orders that concern or govern the following subjects: (a) the process by which OPSO keeps and maintains a record of pretrial detainees from Orleans Parish held by ECPSO pursuant to a Cooperative Endeavor Agreement or other contractual arrangement with OPSO; (b) the process by which OPSO provides notice to DPS&C that a person has been sentenced by the Orleans Parish Criminal District Court to serve a term of imprisonment in the custody of DPS&C; (c) the process by which OPSO completes pre-classification documents, paperwork, and/or any other action after a person that has been sentenced to serve a term of imprisonment in the custody of DPS&C; (d) the calculation of the lawful release date of a person sentenced by the Orleans Parish Criminal District Court to serve a term of imprisonment in the custody of DPS&C; (e) the process by which a person sentenced by the Orleans Parish Criminal District Court to serve a

term of imprisonment in the custody of DPS&C is assigned to, and transported to, the custody of ECPSO after the person's date of incarceration; and (f) the training and evaluation of employees of OPSO responsible for the processes set forth in Interrogatory 3 (a), (b), (c), (d), and (e).

**Response to Interrogatory No. 3:**

a) Any inmate housed outside of Orleans Parish is maintained in the AS400 system as an active Orleans inmate, and maintains an active inmate folder, until such time that he is released or transferred to DOC custody.

b) The OPSO provides a completed pre-classification packet, including all sentencing paperwork, directly to East Carroll Parish Sheriff's Office and documents the transfer via logbook. The inmate is only released from OPSO custody once confirmation is received that ECPSO classification staff was in physical receipt of that packet.

c) OPSO completes all necessary portions of the packet, including gathering of court paperwork, a pre-sentence interview, completes a credit letter for any OPSO time served prior to sentence, and completes a post-sentence AFIS booking.

d) Under Louisiana law, the OPSO has no authority to calculate sentences or release dates once an inmate is sentenced to the custody of DOC.

e) Any such individual is transported by bus. Once confirmation of receipt of the pre-classification packet was received by ECPSO, the defendant was released from OPSO custody and into DOC custody.

f) Only two employees have performed the pre-classification function, and all were trained by Major Rochelle Lee and/or Captain D'juana Bierria to complete pre-classification packets.

**Interrogatory No. 4**:   Identify all persons (including OPSO staff and their supervisors, including but not limited to Defendants Marlin Gusman and Corey Amacker, as well as former Independent Compliance Director Gary Maynard) who were involved in any of the following: (a) any communications between OPSO and either ECPSO and/or DPS&C concerning any of the Plaintiffs, and in particular, any communications concerning their transfer to the custody of DPS&C after their date of incarceration; (b) any communications between OPSO and ECPSO and/or DPS&C concerning any of the Plaintiffs, and in particular, any communications concerning their transfer to the custody of ECPSO after their date of incarceration; (c) the calculation of the lawful release date of any of the Plaintiffs; and (d) any communications between or among DPS&C, ECPSO, and/or OPSO concerning the lawful release date of any of the Plaintiffs.

**Response to Interrogatory No. 4:**   None other than the communications provided in the form of the pre-sentencing packet and its contents.

**Interrogatory No. 5**:   Identify any documents known to you (whether or not in your possession, custody, or control) concerning any of the Plaintiffs, and in particular: (a) any communications concerning their transfer to the custody of DPS&C after their date of incarceration; (b) any communications concerning their transfer to the custody of ECPSO after their date of incarceration; (c) the pre-classification of any of the Plaintiffs; (d) the calculation of the lawful release date of any of the Plaintiffs; and/or (e) any communications between or among DPS&C, ECPSO, and/or OPSO concerning the lawful release date of any of the Plaintiffs.

**Response to Interrogatory No. 5:**   See the attached release certificates contained in the "Correspondence" folder on the provided Dropbox. Defendant has produced all other documents known to him pertaining to any of the requested areas.

**Interrogatory No. 6**: For each Plaintiff, state and describe any facts or circumstances known by you which justify or explain the continued incarceration of that Plaintiff from his lawful release date until the date of his release from custody, identify all persons with discoverable knowledge of each such fact or circumstance, and identify all documents which describe or disclose each such fact or circumstance.

**Response to Interrogatory No. 6:** Defendant objects to the definition stated above of "lawful release date" to any extent that it considers "good time" as part of said calculation, as diminution of sentence is given at the discretion of the secretary of the Department of Corrections and is not presumed or earned at the moment of sentencing and is not presumed or earned at the moment of sentencing, it is contingent on actual good behavior and/or participation in programs. Defendant has no information sufficient upon which to make any representation as to whether the Plaintiff was entitled to "good time," either based upon the conditions imposed by law or the discretion of the DOC or each facility which held him prior to sentencing.

Defendant further notes, as indicated above, that Phillip Dominick had credit for time served on offenses despite it already being applied to previous offenses in violation of Louisiana law. Defendant reserves his right to supplement or amend any of this response pending receipt of discovery from the Plaintiffs or other Defendants about the facts underlying their sentences.

**Interrogatory No. 7**: Describe your current and/or former duties related to (a) the pre-classification of prisoners sentenced to imprisonment in the custody of DPS&C; and (b) the calculation of the lawful release date of prisoners sentenced to imprisonment in the custody of DPS&C.

**Response to Interrogatory No. 7:** None.

10

**Request for Production of Documents No. 1**: Produce the complete OPSO file concerning each of the Plaintiffs.

**Response to Request for Production of Documents No. 1:** These documents are being gathered and will be produced within 14 days.

**Request for Production of Documents No. 2**: Produce all documents identified by you in your answers to Interrogatories Nos. 1 through 7.

**Response to Request for Production of Documents No. 2:**

All documents are collectively produced in the Dropbox, the link to which is being provided at the time of transmission.

**Request for Production of Documents No. 3**: Produce any communications to or from you regarding any inquiry, grievance, or petition by or concerning any of the Plaintiffs (whether from the Plaintiffs themselves or a friend, family member, agent or attorney acting on their behalf) from June 1, 2016 to the present.

**Response to Request for Production of Documents No. 3:** None other than those transmitted by the Plaintiffs' counsel.

**Request for Production of Documents No. 4**: Produce a complete copy of the personnel files of Defendants Marlin Gusman and Corey Amacker.

**Response to Request for Production of Documents No. 4:** See attached. Defendant has redacted personal information including social security numbers, personal health information, spousal and emergency contact information, and employee numbers.

**Request for Production of Documents No. 5**: Produce documentation of any legal settlements or other resolution of lawsuits brought against Defendants Gusman and Amacker from January 1, 2014 to present.

11

**Response to Request for Production of Document No. 5:** Defendant objects to this request as overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendant holds an office with 800 employees and is involved in constant litigation of matters not remotely related to the subject of this proceeding and compilation of all judgments would require an extensive amount of time.

**Request for Production of Documents No. 6**: Produce all documents concerning, discussing, or related to your duties with respect to: (a) the calculation of the lawful release date of a person sentenced to imprisonment in the custody of DPS&C; (b) communication concerning the transfer of custody of a person from a local parish jail to DPS&C after that person's date of incarceration; and/or (c) communication regarding the transfer of custody of a person from OPSO to either DPS&C or a parish jail or prison after the person's date of incarceration.

**Response to Request for Production of Documents No .6:** None other than what has already been produced.

**Request for Production of Documents No. 7**: Produce all documents concerning the housing of prisoners in the custody of OPSO and/or ECPSO after their date of imprisonment, including, but not limited to: (a) any Memorandum of Understanding or Cooperative Endeavor Agreement between OPSO and either DPS&C or ECPSO from January 1, 2016 to the present; (b) any standards, policies, procedures or other documents concerning the pre-classification of prisoners sentenced to state time; and (c) any standards for processing of grievances from prisoners serving state time in OPSO, ECPSO, or any other parish jail or prison.

**Response to Request for Production of Documents No. 7:** See the attached MOU between ECPSO and the OPSO. See also the attached grievance policy.

**Request for Production of Documents No. 8**: Produce (a) any billing, invoices, or other forms of request sent to OPSO by ECPSO for payment or reimbursement for the housing of prisoners (including, but not limited to, pretrial detainees and incarcerated persons) by ECPSO from January 1, 2016 to the present; (b) any billing, invoices, or other forms of request sent to ECPSO by OPSO for payment or reimbursement for the housing of prisoners (including, but not limited to, pretrial detainees and incarcerated persons) by ECPSO from January 1, 2016 to the present.

**Response to Request for Production of Documents No. 8:** These have been requested and will be provided upon receipt.

**Request for Production of Documents No. 9**: Produce any billing, invoices, or other forms of request sent by OPSO to DPS&C for payment or reimbursement for the housing of prisoners (including, but not limited to, pretrial detainees and incarcerated persons) from January 1, 2016 to the present.

**Response to Request for Production of Documents No. 9:** See attached billing documents.

**Request for Production of Documents No. 10**: Produce any and all grievances or complaints filed by any person from January 1, 2015 to the present concerning the failure to release him/her from custody after his/her lawful release date or concerning the failure of OPSO or any other agency to provide for his/her pre-classification and/or calculation of his/her lawful release date.

**Response to Request for Production of Documents No. 10:** See attached grievance files.

**Request for Production of Documents No. 11**: Produce all documents reflecting or concerning any indemnity arrangement or insurance policy that may be available to indemnify Defendants Marlon Gusman and Corey Amacker for any damages awarded in this civil action.

**Response to Request for Production of Documents No. 11:** None.

**Request for Production of Documents No. 12**: Produce a staffing roster for any employee, contractor, agent, or representative of OPSO who participated in and/or supervised pre-classification, time calculation, and/or orders of release for incarcerated persons from January 1, 2016 to the present.

**Response to Request for Production of Documents No. 12:** None.

**Request for Production of Documents No. 13**: Produce all documents related to any communications and/or training provided by OPSO, its employees, contractors, or agents, and/or the Independent Jail Compliance Director to ECPSO and/or its employees, contractors, or agents related to pre-classification and/or time calculation for persons sent to ECPSO by OPSO as DOC prisoners.

**Response to Request for Production of Documents No. 13:** No responsive documents.

**Request for Production of Documents No. 14**: Produce all documents used or referred to by you in responding to these interrogatories, requests for admission, and requests for production of documents.

**Response to Request for Production of Documents No. 14:** None other than what has already been produced.

Respectfully submitted,

**ORLEANS PARISH SHERIFF'S OFFICE**

*/s/Blake J. Arcuri*
Blake J. Arcuri (LSBN 32322)
Laura C. Rodrigue (LSBN 30428)
Freeman R. Matthews (LSBN 9050)
2800 Perdido St.
New Orleans, LA 70119
Telephone: 504.493.2107; Fax: 504.202.9454
arcurib@opso.us; rodriguela@opso.us
*Counsel for Sheriff Gusman & Corey Amacker*
-PUBLIC ENTITY/FEE EXEMPT-
(See La. R.S. 13:4521 & 13:5112)

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2019. I served the foregoing discovery requests on counsel for all parties via electronic mail.

*/s/ Blake J. Arcuri*